## J. M. LYBRAND v. H. FULLER.

### Decided June 28, 1902.

**1.—Homestead—Segregation—Renting.**

Though the renting out of a lot forming part of the homestead may constitute a segregation, yet where the owner, his house on the other lot being afterwards burned, moves onto the lot so rented, and uses it for homestead purposes, this restores the homestead character.

**2.—Notes—Maturity—Failure to Pay First of Series—Notice—Defense of Homestead.**

Where each of a series of notes stipulates that a failure to pay any note at maturity shall mature all, a purchaser of the notes after one has matured is, as to all of them, a purchaser after maturity; and all the notes being secured together by a vendor's lien, the purchaser is charged with notice of homestead rights existing as a defense against them all.

**3.—Homestead—Loan—Simulated Sale—Void Lien.**

Where a vendor's lien is created by a simulated sale and conveyance of the homestead, made without consideration, and merely to permit the grantor to raise money on the lien notes given for the purchase price, such lien will not be enforced in favor of one who purchased the notes after maturity as against an assertion of the homestead right.

**4.—Same—Estoppel.**

See facts held not to estop the owner from asserting his homestead right as against such purchaser of the notes after maturity.

Appeal from the District Court of Van Zandt County. Tried below before Hon. J. G. Russell.

*Kearby & Kearby,* for appellant.

*H. G. Robertson* and *W. B. Wynne,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This was an ordinary suit of trespass to try title and for damages, instituted by appellee March 9, 1899, against appellant. The petition was regular in form. Appellant answered by general denial, plea of not guilty, and specially plead that the property in controversy was the homestead of himself and family; that appellee (plaintiff below) was asserting title to said property by virtue of mesne conveyances from appellant, and especially by virtue of a deed from this appellant to one R. N. Lybrand; that said deed was null and void; was a pretended, fictitious sale of said property which was executed without any consideration, either good or valuable; that the consideration, if any, for said deed, had wholly failed. Appellant prayed that said deed be canceled, and that he be quieted in his title and possession.

Appellee replied and plead that he was a bona fide purchaser for value, and that appellant was estopped from asserting his homestead claim by reason of certain declarations of appellant. Trial was had before the court without a jury, which resulted in a judgment for appellee for a part of the property sued for, from which judgment appellant in open court gave notice of appeal, and has regularly perfected his appeal to this court.

The trial court filed the following conclusions of fact:

"(1) On the — day of ——, 1896, J. M. Lybrand, joined by his wife, Nettie Lybrand, made their joint deed to R. N. Lybrand, whereby they conveyed to him the following described land: Part of block 2, Nixon's northeast addition to Wills Point, Texas, as shown by the official map of said town, and more particularly described as follows, to wit: Beginning at the N. W. corner of J. E. Owen's lot; thence S. 4½ W. 150 feet; thence N. 85½ W. 100 feet; thence N. 4½ E. 150 feet; thence S. 4½ E. 100 feet to the place of beginning. This deed was properly acknowledged, and was filed for record with the proper officer of Van Zandt County on the 14th day of August, 1896, and the deed bears date on its face July 1, 1896.

"(2) Prior to the execution of this deed, J. M. Lybrand alone made a deed to R. N. Lybrand, in which he conveyed to him the same property. When this first deed was executed R. N. Lybrand executed and delivered to J. M. Lybrand three promissory notes for $300 each, and due respectively on January 1, 1897, January 1, 1898, and January 1, 1899, and these notes on their face expressly retain the vendor's lien upon the land described in paragraph 1, above, and provide on their face that a failure to pay either of them at maturity should mature all of them remaining unpaid.

"(3) These notes were endeavored to be placed with one Kennedy by J. M. Lybrand, and Kennedy objected to them because the wife of

J. M. Lybrand had not joined in the deed, and thereupon J. M. Lybrand and his wife, Nettie Lybrand, made the deed first mentioned.

"(4)   The deed from J. M. Lybrand and his wife, Nettie Lybrand, to R. N. Lybrand properly describes the three notes aforesaid, and recites that it was executed by the grantors in consideration of the said three notes and $150 in cash, and declares that each of those notes retains a vendor's lien on the land conveyed to secure their payment. Fuller knew nothing of the first deed, nor that the second deed was made on any date other than shown in its face.

"(5)   R. N. Lybrand really paid nothing for the land conveyed to him by the said deeds.   The land was conveyed to him by J. M. Lybrand and wife, and he executed and delivered the notes to J. M. Lybrand, and the purpose to be accomplished by all the parties to the transactions was to enable the said J. M. Lybrand to use the said notes for the purpose of raising money by selling or hypothecating said notes.   J. M. Lybrand made attempts to use said notes frequently before they were delivered by him to the plaintiff, Fuller.

"(6)   Some time prior to the 2d day of May, 1898, J. M. Lybrand was holding for said Fuller some shares of bank stock; said stock had been left by Fuller with Lybrand for safe keeping; Lybrand pledged this stock to parties in St. Louis as security for a sum of money borrowed there by him (Lybrand), and the debt which the bank stock was so pledged to secure amounted to about $3000.   H. Fuller discovered the use which had been made of the bank stock by J. M. Lybrand; he also was informed that the bank stock was to be sold in a few days after the discovery, by the parties in St. Louis, to pay said Lybrand's debt for which it had been hypothecated.   In order to protect this bank stock and prevent the sale in St. Louis to pay J. M. Lybrand's debt, H. Fuller was compelled to pay said Lybrand's debt to the St. Louis parties, amounting to about $3000; Lybrand agreed to secure Fuller for this outlay of money, and on the 2d day of May, 1898, J. M. Lybrand, for the purpose of securing Fuller in the amount of said debt in St. Louis, which Fuller was compelled to pay as aforesaid, executed and delivered to Fuller a bill of sale, in which he conveyed to him, among other things, the three vendor's lien notes aforesaid of R. N. Lybrand, and having indorsed said notes in blank, J. M. Lybrand delivered them to H. Fuller.   This last instrument mentioned, which appears on its face to be a bill of sale, was really executed for the purpose of securing Fuller in the payment of J. M. Lybrand's said debt to the St. Louis parties.

"(7)   H. Fuller sued R. N. Lybrand on said notes and to foreclose the said vendor's lien, and on the 31st day of October, 1898, in the District Court of Van Zandt County, obtained judgment against R. N. Lybrand for the full amount of said notes, together with a foreclosure of the vendor's lien upon the land described in the deed from J. M. Lybrand and wife to R. N. Lybrand, and this judgment has been affirmed by the Court of Civil Appeals.   Upon this judgment against

R. N. Lybrand an order of sale was issued, and by virtue thereof the sheriff of Van Zandt County sold said land at public outcry and H. Fuller became the purchaser for the sum of $375, and it was conveyed to him by the sheriff by deed under the powers and authority aforesaid, and the amount bid credited on Lybrand's debt to Fuller. At this sale J. M. Lybrand, the defendant, had public announcement made that he claimed the land as his homestead; that he never in point of fact sold it to R. N. Lybrand, and that the consideration for said notes aforesaid had failed.

"(8) About 1884 J. M. Lybrand bought the land in controversy, together with another lot, No. 1, lying adjacent thereto on the west, for homestead purposes. He erected a residence thereon, which he occupied as a home for himself and family, on lot No. 1, and upon lot No. 2, in controversy, he built his barn, and used said lot No. 2, in connection with his residence lot, for homestead purposes. Lybrand opened a narrow lane between the two lots which was used as a passway to his barn, but was also used by the public with his permission, as a passway between the two streets on the north and south of said lots, and the whole of the two lots were used by J. M. Lybrand for homestead purposes continually until the date next hereinafter mentioned.

"(9) In the year 1896 J. M. Lybrand erected a dwelling on lot No. 2, which he surrounded with a fence; this residence and the improvements included within said fence embraced all of said lot No. 2, except the portions of said lot used by said Lybrand for use as his barn and barn lot, which included 60x60 feet of said lot No. 2. Immediately after completing said residence on lot No. 2, said Lybrand rented that portion of said lot covered by said improvements to one Weisenberger, and that portion of said lot was thereafter occupied by said Weisenberger as a residence, and during the time said residence was so rented said Lybrand made no use of the portion of said lot embraced in said improvements for homestead purposes. Weisenberger was in possession of said lot covered by said improvements, holding as the tenant of J. M. Lybrand as aforesaid, at the time the deed was made by J. M. Lybrand and wife to R. N. Lybrand in 1896, and at the time R. N. Lybrand executed and delivered the notes to J. M. Lybrand in 1896.

"(10) About the — day of January, 1897, the residence occupied by J. M. Lybrand as a home, situated on lot No. 1, was destroyed by fire; J. M. Lybrand at once moved into the house on lot No. 2, which had been occupied by said Weisenberger, and from the date after he so moved into said house, said Lybrand and family occupied said Weisenberger house as a home; J. M. Lybrand was occupying said house as a home for himself and family at the time he transferred and delivered said notes to H. Fuller to secure the amount paid by Fuller to the St. Louis parties, and at the time said J. M. Lybrand moved into the said Weisenberger house the first of the three notes aforesaid was past due and unpaid.

"(11) Fuller had been an intimate friend of Lybrand, and was

familiar with Lybrand's purchase of the land, and knew the various uses and purposes to which it had been put as hereinbefore set out; he knew where Lybrand's first house was situated; knew of the erection of the tenant house and its rental and occupancy by Weisenberger as a home and its subsequent occupancy by J. M. Lybrand as a home. But at the time Fuller received the notes from Lybrand he had no notice that the conveyance to R. N. Lybrand was other than a genuine transaction and bona fide sale to R. N. Lybrand, and he was told by J. M. Lybrand that the conveyance to R. N. Lybrand was a real and genuine sale, and that the property embraced in that deed was not his homestead, but was that portion of the lot covered by the improvements rented to Weisenberger."

These conclusions are adopted, except where modified by the facts set out in the opinion.

*Opinion.*—Appellant contends that the judgment is not supported by the evidence, and that under the facts as found by the trial court, judgment should have been rendered for appellant. It is shown in the conclusions of fact that the two lots were originally acquired by J. M. Lybrand for a homestead, and that they were so used. The trial court was of the opinion that in 1896, when appellant erected the house on lot No. 2 and rented the same, he thereby segregated all that part of said lot from his homestead except 60x60 feet at the rear of said lot upon which his barn was located. This house was occupied by a tenant at the time appellant and wife executed the deed for the property to R. N. Lybrand and received from him his three notes purporting to be given in payment for the lot. If it be conceded that these facts operated as a segregation and an abandonment by appellant of that part of the homestead described in the deed to R. N. Lybrand, still it does not follow that at the time appellee acquired the notes said property was not appellant's homestead. When his residence on lot No. 1 was destroyed by fire in 1897, appellant and his family moved into the house on the lot in controversy, and were occupying it as their home when appellee acquired the notes. The conveyance from appellant and wife to R. N. Lybrand was without consideration. It was not intended to pass title to the property. Its sole purpose was to enable appellant to borrow money on the notes executed by R. N. Lybrand. R. N. Lybrand did not claim to own the property. Appellant was unable to borrow money on these notes, and had them in his possession when he moved upon the property in 1897. In an additional conclusion of fact the court found that "Lybrand was living on the lot with his family as a home at the time the notes were transferred to Fuller, and if the lot was not then burthened with the lien of said notes under the circumstances in which Fuller obtained them, then Lybrand could assert homestead claim to the lot." It thus appears that the court was of the opinion that it was the intention of the appellant when he moved on the lot in controversy, in 1897, to make it his homestead, and that it became

such subject only to any right acquired by appellee by the transfer of the notes to him. The question presented is, was the homestead right of appellant subordinate to the notes and vendor's lien? There are cases which hold that a purchaser of a note given for purchase money in an apparent sale of the homestead is entitled to protection as against the homestead claim. Graves v. Kinney, 66 S. W. Rep., 293; Hunt v. Cooper, 63 Texas, 362; Texas Banking Co. v. Turnely, 61 Texas, 365; Love v. Breedlove, 75 Texas, 649. In each of these cases the grounds for holding the homestead right subordinate to the note and lien are stated to be that the note has passed into the hands of a purchaser for value before maturity and without notice of any failure of consideration. Graves v. Kinney, supra.

In the case at bar the notes were dated July 1, 1896, and the first note matured January 1, 1897, the second, January 1, 1898, and the third, January 1, 1899. They show upon their face that they were given as a part of the consideration for the conveyance from J. M. Lybrand and wife to R. N. Lybrand, and each stipulated that the failure to pay any one of the notes when due should mature the others. When appellee acquired the notes the first two were past due, and the third had matured by contract making the failure to pay any one of the notes when due mature the others. Thus all of the notes, under their very terms, were past due when they were conveyed to appellee. Association v. Stewart, 27 Texas Civ. App., 299; 61 S. W. Rep., 386.

Again, it is held in the case of Harrington v. Claflin, 91 Texas, 295, that where several notes secured by a lien on a homestead show upon their face that they were given as parts of the same transaction and as installments of one common consideration, the first being overdue when transferred to plaintiffs, it was sufficient to charge them with notice of the defense as to all the other notes.

We are of the opinion that the principle announced in that case is applicable to the case at bar, although the party resisting the enforcement of the lien in that case was the maker of the notes, while here it is the payee. We conclude that appellee was not an innocent purchaser of the notes, he having acquired them after their maturity. Not being an innocent purchaser of the notes, the appellee was chargeable with such infirmities in their execution as resulted from a want of consideration. The proof shows that there was no valid consideration for the execution of the notes. It further shows that the purported vendor's lien was fictitious. It follows that the trial court erred in holding that the homestead rights of appellant in the property were subordinate to the rights of appellee acquired through the foreclosure of the notes and lien.

The trial court was of the opinion that appellant was estopped from claiming the property as his homestead for the reason that when he transferred the notes to appellee he represented to him that the property was not his homestead. When this statement was made and when the

notes were transferred to appellee, appellant and his wife were in actual occupancy of the property as their homestead. As before stated, title to the property was in him. Appellee did not examine the records of the county clerk's office, and did not see the deed from appellant and wife to R. N. Lybrand before acquiring the notes. He knew all the time of appellant's use and occupancy of the property, and was an intimate friend of appellant. He obtained the notes after their maturity, and as collateral security for a pre-existing debt. When he sued upon the notes, neither the appellant nor his wife was made a party to the suit. When the property was sold by the sheriff under the foreclosure proceedings against R. N. Lybrand, appellant gave actual notice of the true character of the conveyance to R. N. Lybrand, and that the property was the homestead of himself and wife. Appellee purchased the property at that sale, and the amount bid was credited upon the judgment. The facts are insufficient to estop appellant from asserting the homestead right of himself and his wife to the property. Loan Co. v. Blalock, 76 Texas, 85; Texas Land and Mort. Co. v. Cooper, 67 S. W. Rep., 173.

We are of opinion that under the facts the trial court erred in rendering judgment for appellee, and in not rendering judgment for appellant. The judgment is reversed and here rendered for appellant for the land described in the petition.

*Reversed and rendered.*

Writ of error refused.