[No. 7716.   Decided May 3, 1909.]

C. H. SPENCER, *Plaintiff and Respondent*, v. ALKI POINT TRANSPORTATION COMPANY, *Defendant and Respondent*, AMERICAN SAVINGS BANK & TRUST COMPANY *et al.*, *Interveners and Appellants.*[1]

RECEIVERS — OF INSOLVENT CORPORATIONS — AUTHORITY — STIPULATION—STOCKHOLDERS—RIGHT TO APPEAL.   Where the receiver and several stockholders of a corporation intervened in an action against the corporation, a stipulation of the receiver in the nature of a compromise, authorized by the court, binds the stockholders, as the receiver represents the stockholders as well as the corporation; and an appeal by the stockholders will not be considered.

BILLS AND NOTES—INDORSERS—PRESUMPTIONS.   The fact that renewal notes were not signed by indorsers of the original note raises a presumption that they signed only as sureties.

BILLS AND NOTES—INDORSEMENT—PAROL EVIDENCE TO CONTRADICT—NATURE OF LIABILITY.   Parol evidence is admissible to show that the indorsers signed as sureties although the note recited that every party signing or indorsing the note bound himself as principal and not as surety.

BILLS AND NOTES—CONSIDERATION.   The maker of a note may show want of consideration.

CORPORATIONS—POWERS—SURETYSHIP.   In the absence of evidence of power in the charter so to do, a corporation cannot become a surety upon a note.

SAME—DEFENSES—ULTRA VIRES.   A corporation is not estopped to set up the defense of *ultra vires* to an action upon a surety obligation, where the evidence that it received the benefit of the contract is vague and uncertain.

TRIAL—CONDUCT OF CAUSE—REOPENING CASE FOR EVIDENCE—DISCRETION.   It is not an abuse of discretion to refuse to open a case for the further evidence of the president of the company who had just returned after an absence of two months, where such president was the attorney of the company at the time it intervened, and failed in his duty to advise the attorneys as to the materiality of his evidence.

BILLS AND NOTES—TRANSFER—BONA FIDE PURCHASERS—NOTICE OF INFIRMITY.   The fact that the first of four mortgage notes was overdue at the time of the assignment of the mortgage and notes, does not constitute notice of an infirmity in the three unmatured notes in the hands of innocent purchasers in good faith, especially where

[1]Reported in 101 Pac. 509.

a payment of part of the principal and interest on the first note was indorsed as paid after its maturity; in view of Laws 1899, p. 350, § 56, defining notice of an infirmity in a negotiable instrument to be actual knowledge of the defect or of such facts as to amount to bad faith.

MORTGAGES—DEFAULT IN INSTALLMENTS—MATURITY.  A provision in a mortgage that on failure to pay any of the notes when due, the whole sum shall become due, does not mature the whole debt.

BILLS AND NOTES—TRANSFER—BONA FIDE PURCHASERS.  The bona fides of the purchase of notes made by a corporation to its president is not affected by the relations between the president and the corporation.

APPEAL—REVIEW—ESTOPPEL TO ALLEGE ERROR—STIPULATIONS.  After a stipulation compromising the amount due "for the purposes of this judgment," a party cannot allege error thereon on the theory that the stipulation had no effect on a judgment in the supreme court.

BILLS AND NOTES—TRANSFER—BONA FIDE PURCHASERS.  A transferee of notes after dishonor and suit, as security for an antecedent debt, is not a bona fide purchaser.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 27, 1908, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to foreclose a mortgage.  Affirmed in part and reversed in part.

*R. P. Oldham*, for appellants Coleman and Anderson.

*H. R. Clise*, for appellant Washington Trust Company.

*Farrell, Kane & Stratton*, for appellant American Savings Bank & Trust Company.

*James A. Snoddy*, for appellant Thomas, Receiver etc.

*Geo. W. Saulsberry*, for respondent Spencer.

GOSE, J.—The respondent Alki Point Transportation Company is a Washington corporation, and during the times hereinafter stated was engaged in equipping and operating a pleasure resort at Alki Point near Seattle.  The respondent C. H. Spencer, at the times the several liabilities hereafter considered arose, was its president and general manager.  The American Savings Bank & Trust Company and the Wash-

ington Trust Company are corporations engaged in the bank-
ing business at Seattle.    Pending the litigation, Josiah Thom-
as was appointed receiver for the Alki company.    Anderson
and Coleman are stockholders in the last-named company.
On September 12, 1905, the appellant the Washington Trust
Company made a loan of $5,000, and received as evidence
thereof a note of that date for such sum, signed by the said
C. H. Spencer, and indorsed on the back thereof: "Alki
Point Transportation Company, by C. H. Spencer, Pres.,
George V. Wilkes, Secy."    Such note recited: "For value
received, each and every party signing or indorsing this note
hereby waives presentment, demand, protest and notice of non-
payment thereof, binds himself thereon as a principal, not as
a surety."    On such date the bank credited the account of
the Alki company with $5,000, at the request of either Spen-
cer, Wilkes, or the bookkeeper of the Alki company.    On the
same date the Alki company, by its president and secretary,
drew a check to such bank for $5,000, and the same was there-
upon placed to the credit of C. H. Spencer.    At the time
of the execution and delivery of such note, Spencer pledged
to such bank, as security for such loan, fifteen hundred and
forty-three shares of stock of the Alki company, then stand-
ing in his name.    On February 24, 1906, the stockholders
and directors of the Alki company, by a unanimous vote,
adopted the following resolution:

"Resolved, that for the purpose of obtaining money to
pay off the present indebtedness of the company, and for the
purpose of further improving, developing and equipping
the property as may be necessary in the conduct of its busi-
ness, that we borrow the sum of $10,000, and, in order to
raise such sum and to evidence said indebtedness, we here-
by authorize the president and secretary of this company to
sign, seal and issue its four promissory notes, each for the
sum of $2,500, each to bear interest at the rate of 8 per cent.
per annum, payable semi-annually, and said notes to be pay-
able respectively six months, one year, eighteen months and
two years after date, and that to secure the payment of the
principal and interest of said notes, it is further resolved,

that the president and secretary of this company sign, seal,. acknowledge, execute, and deliver a mortgage covering all the present and in the future to be acquired property of this company, real, personal and mixed, of whatever kind or nature, and all its rights, privileges and franchises which may be hereafter acquired."

On the same day the Alki company, by its president and secretary, executed and delivered to I. N. Just, four promissory notes, each drawn for the sum of $2,500, due respectively in six, twelve, eighteen, and twenty-four months. The four notes were fair upon their face, and identical except as to the date of maturity. There was no reference on either note to any other note, or to any mortgage. At the same time, and to secure the payment of the indebtedness evidenced by such notes, the Alki company, by its president and secretary, made, executed, acknowledged and delivered to such payee a mortgage upon all of its property, in conformity to such resolution. The mortgage recited that its execution was authorized by its articles of incorporation, the laws of the state, and its stockholders and trustees, "for the purpose of further improving, developing, and equipping" its property. It further recited:

"But in case default be made in the payment of the principal or interest of said promissory notes or any part of, or either of them, when the same shall become due and payable according to the terms and conditions thereof, or if default be made in any other of the covenants and conditions hereof, then the party of the second part, his heirs, executors, administrators and assigns, are hereby empowered to sell the said premises and property with all and every of the appurtenances, or any part thereof, in the manner prescribed by law, and out of the money arising from such sale to retain the whole of said principal and interest whether the same shall be then due or not."

The notes also provided that a failure to pay interest as it became due should mature both principal and interest at the option of the holder. There is no evidence that Just gave any

value for the mortgage.   The mortgage was recorded March 14, 1906.   On March 29, Just assigned the notes and mortgage to Spencer and the assignment was recorded March 31, following.   On September 20, 1906, the appellant the American Savings Bank & Trust Company loaned to C. H. Spencer the sum of $6,000.   At such time Spencer assigned and delivered to it the notes and mortgage of the Alki company, as security for such sum and for such further advances as it should make.   This assignment was recorded January 5, 1907. October 2, 1906, it advanced to Spencer on such security a further sum of $1,500.   At the time it made the loan of $6,000, the note first maturing was overdue and had the following indorsement:  "Paid $1,000, August 23, 1906.   Paid $40 interest, August 23-06.  Paid $400 September 10, 1906."

November 14, following, Spencer commenced a suit for the foreclosure of the mortgage, alleged its provisions in case of default, and that all of the notes were due.   He also alleged that he was the owner and holder of the mortgage.   December 12, the appellants Coleman and Anderson, as stockholders of the Alki company, filed their complaint in intervention, wherein they affirmatively pleaded that the notes and mortgage were in fact made in the name of Just, but for the benefit of Spencer; that the actual amount due to Spencer from the Alki company at the time of the execution of the notes and mortgage, was about $3,247.15; that at such time the company was unable to pay its obligations in the regular course of business.   February 21, 1907, the appellant the American Savings Bank & Trust Company, by leave of court, filed its complaint in intervention, and alleged the making of the loan and the assignment of the notes and mortgage to it as security as heretofore stated.   It further alleged that it recognized the interest of the plaintiff in the mortgage subject to the assignment, and that it desired the foreclosure of the mortgage.   These matters were affirmatively pleaded. Through inadvertence, it would seem, it admitted the para-

graph of the complaint which alleged that the plaintiff was the owner of the notes and mortgage. February 27, following, the appellant the Washington Trust Company filed its complaint in intervention. It pleaded that the $5,000 note, to which reference has been made, was a loan to the Alki company and Spencer; that subsequent to the assignment of Spencer to the American Savings Bank & Trust Company, and on January 6, 1907, the former assigned to it his right, title, and interest in the notes and mortgage subject to the former assignment. Josiah Thomas, as receiver of the Alki company, filed his complaint in intervention. He pleaded affirmatively, in substance, that Spencer was largely indebted to the Alki company on unpaid subscriptions to its capital stock, and for money that he had received and not accounted for; that Just took the notes and mortgage as an accommodation to Spencer; that the Alki company was insolvent. Issues were then joined by the several parties, and the case wherein the receiver was appointed was consolidated with this cause, and they thereafter proceeded as one action. Thereupon said cause was tried and submitted to the court for its decision, and all the parties to the action, except the appellants Coleman and Anderson, stipulated that for the purpose of "this judgment," the court should find that, before the commencement of the suit, Spencer had advanced and paid for the Alki company, and that there was due to him from such company on such advances, the sum of $7,000, and the court so found and entered judgment accordingly.

The court also found, that there was no consideration for the notes and mortgage; that the appellant the American Savings Bank & Trust Company took the assignments of the note and mortgage as collateral security after the first of such notes was due; that at the time of the assignment the Alki company was not indebted to Spencer thereon; that such notes and mortgage were fraudulent and void; that the assignment of Spencer carried with it his indebtedness against the Alki company in favor of the American Savings Bank &

Trust Company and Washington Trust Company, as security for their loans, first to the American bank, and second, to the Washington company; that there was due to the former company from Spencer $7,500 and interest, and to the last-named company $4,465 and interest, at the time of the commencement of the action; that the note of the Washington Trust Company did not create an indebtedness against the Alki company; that the latter's name was placed on the back of such note without authority, and that it received no consideration for such indorsement, as the Washington Trust Company well knew. The court then found that certain claims had been proved against the estate of the Alki company; whereupon the court drew and filed its conclusions of law and entered a decree according to such findings and conclusions.

As we have stated, all the parties to the appeal except Coleman and Anderson, who appeared as stockholders of the Alki company, stipulated in the court below, for the purpose of the judgment, that the indebtedness owing from the Alki company to Spencer was $7,000, and the decree was entered for his assignees in this amount. The appellants Coleman and Anderson are undertaking to assign error as to this item. The appellants, other than the receiver, urge that they are bound by the stipulation of the receiver, and that they have no appealable interest. We think that this view must obtain.

"The receiver of an insolvent corporation represents not only the corporation, but also the stockholders and creditors, and it is his duty to assert and protect the rights of each of these several classes of persons." *Washington Mill Co. v. Sprague Lumber Co.*, 19 Wash. 165, 52 Pac. 1067.

"The court appointing a receiver may authorize him to compromise claims and suits against the estate if best for the interest of all parties concerned." 23 Am. & Eng. Ency. Law (2d ed.), § 1080.

This stipulation was entered into with the sanction of the court, to avoid the expense and delay of a reference, and is

in the nature of a compromise.    For these reasons the appeal, of Coleman and Anderson will not be considered.

We will next consider the appeal of the Washington Trust Company. We have noticed that its note was signed by Spencer, and indorsed on its back by the Alki company. Later there were two or three renewals, in one of which the note was signed by Spencer only. In the last renewal the note was signed the same as the first note. The fact that the Alki company indorsed the note, and the further fact that in a renewal it did not sign at all, creates a strong inference that it signed only as surety. In addition to this, both the president and secretary of the Alki company testified that it indorsed the name of the company on the note as surety at the request of the bank. The evidence that it so signed strongly preponderates. The negotiable instruments' act (Laws 1899, p. 345, § 16, subd. 6), provides:

"Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser."

It is argued that the note recites that all the parties signing or indorsing it bind themselves as principals and not as sureties, and therefore that parol evidence will not be heard to dispute it. It might as well be urged that the recital in an instrument to the effect that it was given for a valuable consideration foreclosed the parties to it from pleading either that it was conceived in fraud or that it was given without any value or consideration.

"It has been frequently held that a person signing a note on its face may show that he signed it as a surety and not as a principal." *Tacoma Mill Co. v. Sherwood*, 11 Wash. 492, 39 Pac. 977.

See, also, *Baldwin v. Daly*, 41 Wash. 416, 83 Pac. 724. The maker may also show there was no consideration for the instrument sued on.

The appellant has directed our attention to the case of *Donohoe Kelly Banking Co. v. Puget Sound Sav. Bank*, 13

Wash. 407, 43 Pac. 359, 942, 52 Am. St. 57.   This case merely holds that one who writes his name on the back of a promissory note before delivery is *prima facie* a joint maker.

"A corporation has no power to enter into a contract of suretyship or guaranty, or otherwise lend its credit to another, unless the power is expressly conferred by its charter, or unless such a contract is reasonably necessary or is usual in the conduct of its business. Ordinarily the simple act of becoming surety or guarantor for the contract or debt of another person or corporation is not within the implied powers of a corporation." 7 Am. & Eng. Ency. Law (2d ed.), p. 788.

See, also, *Washington Mill Co. v. Sprague Lumber Co.,* *supra*.

There is no evidence that the Alki company derived any power from its charter to engage to pay the debt of another, nor is there any evidence that it had theretofore entered into such engagements.   It is also urged that a corporation, having received the benefit of such a contract, will not be heard to urge that it was *ultra vires*.   This rule may be conceded in proper cases.   It is unavailing to appellant.   The evidence that it received a benefit, and, if so, to what extent, is too vague and uncertain to become the foundation of any right.

It is further urged that the court abused its discretion in refusing to reopen the case to admit evidence upon the part of the appellant.   The case was commenced in November, 1906, the trial was had in December, 1907, and the decree entered June 27, 1908.   The affidavit of counsel to reopen the case states that, after the trial of the case and on December 22, 1907, the president of the appellant returned from Europe, after an absence of about two months; that he did not know that the president knew anything about the facts prior to the close of the trial.   It is the duty of a litigant to advise his attorney as to the facts of his case.   Such an application is analogous to a motion for a new trial, and is so much within the discretion of the trial court that we will not interfere except in cases where there has been a clear

abuse of such discretionary power. In view of the record as stated, we cannot say that there was such abuse of discretion. *Kreielsheimer v. Nelson,* 31 Wash. 406, 72 Pac. 72. We conclude, therefore, that the Alki company indorsed the note as surety only, and without authority, and that the Washington company knew this fact.

We will next consider the appeal of the American Savings Bank & Trust Company. We have seen that the notes and mortgage were held to be void, for the reasons (1) that they were made to Just for the accommodation of Spencer, without any value or consideration; (2) that the first note was due at the time of their negotiation, and that the notes and mortgage, read together, show that the four notes arose out of one transaction, and that notice of the dishonor of the first note was constructive notice of any infirmity attaching to the notes not due. We have seen that the overdue note, at the time the notes were negotiated to the appellant, had an indorsement of the interest and $1,000 as paid on the principal on August 23, 1906, and $400 as paid September 10, 1906, which was ten days before they were negotiated to this appellant. That these payments had been made as of such dates has not been denied. The fact that the appellant took the notes and mortgage in the utmost good faith and advanced Spencer $7,500, relying upon their being a valid and subsisting obligation of the Alki company, is not questioned in any way other than to invoke the rule that, under all the circumstances of the case, the notice that the first note was overdue was notice of whatever vice existed in the consideration for the other notes. Our negotiable instruments' act (Laws 1899, p. 350, § 56), defines what constitutes notice, as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts as his action in taking the instrument amounted to bad faith."

The receiver relied on the following authorities for an affirmance of the case as to this appellant: *Harrington v. Claflin & Co.*, 91 Tex. 294, 42 S. W. 1055; *Lybrand v. Fuller*, 30 Tex. Civ. App. 116, 69 S. W. 1005; *Stoy v. Bledsoe*, 31 Ind. App. 643, 68 N. E. 907. The *Harrington* case was a suit upon five promissory notes, one of which was overdue when they were negotiated. On the face of each note it was stated that it was given for a part payment for a certain parcel of land consisting of two hundred acres, which was described in the indorsement. The language of the statement was the same on each note. At page 301, the court said:

"What we decide upon this point is that, all of the notes being together and acquired at the same time by the assignee, it appearing in each note that they were parts of one consideration and constitute one contract, the dishonor of the first note, being overdue and unpaid, charged Claflin & Co. with notice that the same defense existed in favor of the makers against the notes not due, as against the overdue note."

In the *Lybrand* case the notes showed upon their face that they were given as a part consideration for the conveyance of certain land, and each note stipulated that the failure to pay any one of the notes when due should mature the others. They were negotiated after the first two notes were past due, and the court said the third note had "matured by contract, making the failure to pay any of the notes when due mature the others. Thus all of the notes, under their very terms, were past due when they were conveyed to the appellee." The court concluded that the indorsee under such circumstances was not an innocent purchaser of the notes, "he having acquired them after maturity." In the *Stoy* case, at page 909, the court, speaking upon this question, observed:

"The mortgage contained a clause to the effect that a failure to pay any one of said notes at maturity then all of them were due and collectible. Appellant took an assignment of the notes and mortgage chargeable with a knowledge of that provision of the mortgage, and he was bound to know

that by the terms of the mortgage both of the notes were past due."

We have adopted the view that such a provision in a mortgage does not mature the whole debt. *Coman v. Peters*, 52 Wash. 574, 100 Pac. 1002. In *Boss v. Hewitt*, 15 Wis. 285, four notes had been given, due respectively in one, two, three, and four years. They were fair on their face and secured by one mortgage, and negotiated when the first note and interest on each of the others were past due and unpaid. The court said:

"And we do not think that a purchaser of negotiable notes before maturity, can be held chargeable with notice of any defect in their consideration, from the mere fact that another note, secured by the same mortgage, was overdue and had not been paid."

It inferentially appeared that these notes were made upon the same date. In *Patterson v. Wright*, 64 Wis. 289, 25 N. W. 10, three notes had been given. Two of the notes, not due, were negotiated after one of the notes and the interest on the others were past due. The purchaser, knew of the existence of the overdue note. At page 291, the court said:

". . . whether the plaintiff had knowledge of any infirmity in the notes, by having in his hands for collection the $500 note which was overdue, or by the failure to pay interest on the notes when due. This question is, in effect, already answered by the fact that the answer alleges no fraud which could affect the notes, but only alleges a setoff. But, conceding that there was fraud in the transaction, the fact that another note given for the same consideration was due, or that interest on the notes remained unpaid, is no such notice as to affect the *bona fides* of the plaintiff's purchase of the notes in suit."

In *Bank of Edgefield v. Farmers Co-Operative Mfg. Co.*, 52 Fed. 98, the court quoted approvingly from Daniel, Negotiable Instruments, § 787, as follows:

"Where more than one note is executed upon the same consideration, they are not all to be regarded as dishonored where one is overdue and unpaid."

In *Noyes v. Landon*, 59 Vt. 569, 10 Atl. 342, the court, at page 346, treats this question in the following language:

"But in view of the general rules that prevail, and are applicable for the protection of the *bona fide* holders of current negotiable paper, we conclude that Noyes obtained a title discharged of all equities to the eleven notes that were transferred to him while current, and that Landon's defense is only applicable to the note that was past due."

This view is approved in an opinion by Mr. Justice Cooley, in *Hull v. Swarthout*, 29 Mich. 249.

Where bonds are negotiated to an innocent purchaser for value, with the unpaid interest coupons attached, the purchaser takes them discharged from all equities existing in favor of the maker. *Long Island Loan & Trust Co. v. Columbus etc. R. Co.*, 65 Fed. 455; *Cromwell v. County of Sac*, 96 U. S. 51, 24 L. Ed. 681; *Indiana etc. R. Co. v. Sprague*, 103 U. S. 756, 26 L. Ed. 554; *Bank of Edgefield v. Farmers Co-Operative Mfg. Co.*, *supra*. In the *Long Island* case thirty-six bonds, regularly issued, each of the denomination of $1,000, each having two unpaid interest coupons attached, fraudulently pledged by the president of the road to an innocent purchaser for value to secure a personal debt, were held to have passed to the purchaser free from the equities of the maker of the bonds. Speaking to this question, in the *Cromwell* case, the court, through Mr. Justice Field, at pages 57, 58, say:

"The nonpayment of an installment of interest when due could not affect the negotiability of the bonds or of the subsequent coupons. Until their maturity, a purchaser for value, without notice of their invalidity as between antecedent parties, would take them discharged from all infirmities. The nonpayment of the installment of interest represented by the coupons due at the commencement of the month in which the purchase was made by Clark was a slight circumstance, and, taken in connection with the fact that previous coupons had been paid, was entirely insufficient to excite suspicion even of any illegality or irregularity in the issue of the bonds."

If nonpayment of interest is insufficient to admit evidence of antecedent equities, the same rule would seem applicable to a failure to pay a part of the principal of one of the notes at maturity. The court observed, in the last case, that the payment had only been delayed from causes of a temporary nature. It would seem to follow that a payment of the interest and a part of the principal on the past due note at its maturity, and the payment of a part of the principal after its maturity, would strongly suggest that the maker was regarding it as a binding obligation. Moreover, the mortgage is a mere incident to the note. The assignment of the notes *ipso facto* passes the security. Had Spencer only assigned the notes, it could not be successfully urged that the bank had notice of dishonor, under any of the authorities to which our attention has been directed. If overdue interest, because the interest is only an incident, does not import notice of dishonor, how can the mortgage, under the circumstances in this case, be given any greater force? Again, Spencer, the holder, was the president and manager of the maker of the notes. As was said in *Indiana etc. R. Co. v. Sprague, supra,* at page 760:

"The fact that he was an officer of the company did not of itself preclude him from dealing in them, or throw the slightest suspicion on his title."

Indeed, it would seem as the accredited agent of the maker, his acts amounted to an implied representation on its part that the notes were a valid and subsisting obligation to the full amount of the three notes that had not matured. Nor can the maker complain that the bank relied upon the assurance of such manager. It was holding him out to the world as a man worthy of trust and confidence.

"Part payment of the bill or note after its maturity, by the drawer or indorser, is an acknowledgment of liability, and therefore alone and unexplained, is presumptive evidence that the liability was duly fixed according to law." 2 Daniel, Negotiable Instruments (4th ed.), p. 203.

Looking at the question from the standpoint of reason, we are strongly impressed with the view that the payment indorsed on the note after its maturity would allay whatever apprehension might have arisen in the minds of the officers of the bank from the fact that the one note had matured and was not paid. Moreover, the evidence shows that the Alki company intended to have the notes and mortgage made to Just notwithstanding the fact that such course was not in strict accord with the resolution. When Spencer was on the witness stand, he was inquired of and answered as follows:

"Q. At the time that this mortgage was made to Mr. Just, it was the understanding and agreement between the incorporators that it was to be assigned by Mr. Just to you, was it not? A. Between the incorporators, the stockholders, the members of the corporation."

Counsel for the receiver urges that this answer of the witness was intended by him as a question. We do not so understand it, nor do we think that such an inference can be fairly drawn from the question and answer. It is reasonable to conclude that the notes and mortgage were made to Just and assigned to Spencer with the knowledge of the maker, and with the intention upon its part that he should negotiate them for its benefit. As against an innocent third party, it should not be heard to complain that he used them for his own advantage. But, aside from the status of the obligation as between the makers of the note and Just and Spencer, we think that the better rule is that, under all the surrounding circumstances, the bank took the three notes that were not due in good faith and for value and without notice. Indeed, it would seem that no other conclusion could reasonably be reached, if any effect is to be given to the section which we have quoted from our negotiable instruments' act. A corporation of necessity must act through its officers and agents, and where it has named a president and general manager, neither it nor its creditors will be heard to dispute his acts when a party has dealt with him as in this case, with every appearance of good

faith, and where such act is not *ultra vires* to the purpose of its incorporation.

The receiver is now urging that we should review the finding and decree as to the amount the Alki company was indebted to Spencer, and that his stipulation was only intended to be effective in the trial court as shown by the words "for the purpose of this judgment." In such cases this is not a court of original jurisdiction. We cannot say that the court committed an error in entering a decree for an amount which had been agreed upon by the interested parties.

The Washington Trust Company took its assignment from Spencer after the commencement of the suit and after the dishonor of all the notes, as security for the payment of an antecedent debt. It cannot, therefore, claim under the assignment. The disposition we have made of the case extinguishes the claim of Spencer against the Alki company.

The judgment will be affirmed as to Coleman and Anderson and the receiver, and as to the Washington Trust Company, except that it will take nothing through Spencer. The judgment will be reversed as to the American Savings Bank & Trust Company, with directions to the trial court to enter a decree for the full amount of its notes, principal and interest, together with one reasonable attorney's fee in its behalf.

In view of the fact that all the mortgaged property has been converted into money and is in the hands of the receiver, the court will direct him to pay such demand as a first preferred claim. The other claims will be paid in the order fixed in the original judgment. The American Savings Bank & Trust Company will recover its costs on appeal.

RUDKIN, C. J., FULLERTON, CHADWICK, CROW, MOUNT, and DUNBAR, JJ., concur.

MORRIS and PARKER, JJ., took no part.