NATIONAL STATE BANK OF MT. PLEASANT, IOWA, v. RICKETTS et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 23, 1912. Rehearing Denied Dec. 28, 1912.)

1. EVIDENCE (§ 157*)—BEST EVIDENCE.

In an action on notes, given for a stallion, in which defendant claimed that the horse was not registered as represented, evidence by the seller that the horse W., taken from his place by his agent for delivery to the purchaser, was actually registered in the French Draft Horse Association, was admissible as tending to identify the horse which the seller turned over to the purchaser, and was not objectionable on the ground that the books of the association would be the best evidence of registration.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460–470; Dec. Dig. § 157.*]

2. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSION OF WITNESS.

In an action on a note claimed to have been indorsed to plaintiff after maturity, evidence that the notes were "owned" by plaintiff since a certain date, and at that time were sent to another bank, was properly excluded as a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

3. EVIDENCE (§ 121*)—RES GESTÆ.

In an action on notes claimed by defendant to have been indorsed to plaintiff bank after maturity, a letter signed by its president, dated March 7, 1910, and addressed to another bank, was admitted in evidence, which stated that plaintiff therewith inclosed the notes due March 25, 1910, at 8 per cent. interest from March 25, 1909, for collection, and added, "We purchased this note on your recommendation, dated April 9, 1909." *Held*, that the quoted part of the letter was properly admitted as a verbal act, having been written before plaintiff knew that defendant claimed that the note had been received by plaintiff after maturity or that their consideration had failed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec. Dig. § 121.*]

4. BILLS AND NOTES (§ 214*)—ASSIGNMENT.

Under Rev. Civ. St. 1911, art. 583, permitting the assignee of negotiable instruments to maintain any action in his own name which the original payee might have brought, by allowing all just discounts, etc., a negotiable note may be assigned either verbally or in writing; indorsement not being necessary.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 492, 493, 505–510, 512, 513, 515, 517; Dec. Dig. § 214.*]

5. WITNESSES (§ 414*)—NOTES—CORROBORATING EVIDENCE.

Where, in an action on negotiable notes, the evidence as to whether they were indorsed to plaintiff before maturity sharply conflicted, and its president testified that they were purchased before maturity, a letter dated before maturity of the notes signed by the president, addressed to another bank, stating that they purchased the notes on such bank's recommendation, dated as stated before the notes matured, was admissible to support the president's testimony at trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1287, 1288; Dec. Dig. § 414.*]

6. BILLS AND NOTES (§ 344*)—BONA FIDE PURCHASER—PURCHASE AFTER MATURITY—SERIES OF NOTES.

The purchase of one of a series of notes after maturity operates as a purchase of all of them after maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 866–868; Dec. Dig. § 344.*]

7. SALES (§ 347*)—NOTES—FAILURE OF CONSIDERATION.

The fact that a registered stallion sold as such was by mistake described in the registration book as having a star, when he had none, would not damage the purchaser beyond the cost of correcting the mistake in registration, in absence of special damage.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 962–972; Dec. Dig. § 347.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by the National State Bank of Mt. Pleasant, Iowa, against L. A. Ricketts and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded for new trial.

Knight & Slaton and C. D. Wright, all of Hereford, for appellant. Carl Gilliland, of Hereford, for appellees.

HUFF, C. J. The appellant, the National State Bank of Mt. Pleasant, Iowa, brought

suit in the district court of Deaf Smith county, October 3, 1910, against appellees, L. A. Ricketts, F. E. Bowe, E. E. Ramsey, L. Gough, Verne Witherspoon, J. O. Newell, and J. P. Snyder, on two notes, each for the sum of $700, dated March 25, 1909, payable to the order of L. M. Hartley, due respectively on the 25th day of March 1910 and 1911; each bearing interest at the rate of 8 per cent. from date and providing for attorney's fees. The appellees, in answer, alleged partial failure of consideration in that the two notes sued on were given for the purchase price of a certain stallion, which was represented to be a registered animal, and averring that he was not registered, and also claiming that the plaintiff did not acquire the notes sued on until the first one to fall due had matured, and alleging the plaintiff had knowledge of the failure of consideration for which the notes were given at the time it purchased them. The defendants also claimed that Hartley and his agents knew that the animal was not a registered animal at the time the agent represented that he was a registered horse. After the jury had been selected, the defendant admitted that the plaintiff had a good cause of action as set forth in its petition, except in so far as it might be defeated in whole or in part by the answer constituting a good defense, and asked and obtained the right to open and conclude the case in adducing the evidence and in the argument. The jury returned a verdict finding that defendant's plea of partial failure of consideration was true and finding in favor of the plaintiff in the sum of $467.08. On this verdict the court rendered judgment in favor of the plaintiff for the amount found by the jury. Each of said notes has the following provision: "In case of the nonpayment of the interest of this note or of any of the series of two notes of which this note is one, or in case of the nonpayment of any of the principal of any of said series of two notes when due, the whole sum of the principal and interest of this note and each and all of said series of two notes to become due and collectible at holder's option." The notes sued on were given for a stallion sold by L. M. Hartley, through his agent, E. G. Maxey, to F. E. Bowe and others, of Hereford, Tex. The contract of sale describes the horse as "one black French draft stallion, named Wiertz, number 14973, volume 10." The "certificate of registry" introduced in evidence is as follows: Registry No. 14973, vol. 10. This certifies that upon the application of L. M. Hartley, residing at Salem, Iowa, there has been recorded in volume 10, National Register of French Draft Horses, the stallion Wiertz, 14973. Color and Description: Black Star. Foaled: June 19, 1905. Bred by: L. M. Hartley." Then follows the breeding of the horse. The witness Bowe testified that he signed the notes before the bill of sale was executed, and that the notes were then in the possession of Maxey, and the other defendants signed the notes during the afternoon, and that it was not until after supper that he saw the bill of sale. He further states that it was about 24 hours after signing the bill of sale that he saw the certificate of registration. He stated, in looking over the certificate after Maxey gave it to him, he ascertained that the horse registered was a black star horse, and that he then stated to Maxey that he did not remember the horse having a star, as called for in the certificate, and Maxey said it was a fault in the writing and did not amount to anything. Maxey had a little book with the breeding of the horse which was the same as shown by the certificate. At the time of the purchase the horse was "rising four years of age," which corresponded with the breeding. The other defendants did not testify in the case. The horse delivered to the appellees was a black horse without any star. A black star horse is understood by breeders as a black horse with a star in the forehead. Whiting, the president of the appellant bank, and Hartley both testified that Hartley transferred the notes to appellant June 30, 1909, and that the bank paid the face value of the notes for same, and at the time of doing so Hartley indorsed the notes. The appellees, by two witnesses, Bowe and Bartley, show that the notes were not so indorsed when transmitted to the Western National Bank of Hereford for collection. Bartley testified he saw the first note in February or March, when it was sent to the Western National Bank of Hereford for collection, and it was not indorsed, and Bowe testified that he saw it in that bank and it was not indorsed by Hartley, and he saw it after it fell due and it was not then indorsed. The note was returned to appellant in May and suit thereafter instituted. The fact that appellant, at the institution of this suit, was the owner of the note, is not controverted; nor is it controverted that the last note to mature came into the hands of appellant before maturity.

[1] The first assignment of error goes to the ruling of the court in excluding that part of Hartley's deposition in which he testifies: "The horse which E. F. Maxey took from my place, named Wiertz, was actually registered in the National French Draft Horse Association." The appellee objected to this evidence on the ground that the books of the association would be the best evidence, which the court sustained. We are inclined, under the facts in the case, to believe the testimony was admissible as a circumstance identifying the horse as the horse which Maxey delivered to Bowe under the contract of sale and which he represented as being registered in the National French Draft Horse Association. The act of registration, as appears from the evidence, is accomplish-

ed by the breeder making application to the association, in which he gives the kind, color, description, name, date when foaled, and the breeding. Whereupon the certificate is issued of such registration. The association keeps a book of such registration, and the owner in this case also appears to have kept a book of the horses bred by him, subject to registration and of those registered. The witness testified: "The horse which Maxey took from my place named Wiertz was eligible to registration in the Percheron Society of America." The question in the case was: Was the horse which appellees purchased registered? The certificate described a horse with a star. Hartley said the horse Wiertz was black and had no star and tells how the mistake could have been made. The testimony we think was at least admissible as tending to identify the horse which he turned over to Maxey as the one sold Bowe. The witness certainly knew what horse it was that he applied to the association to have registered, and he testified it was Wiertz, which he delivered to Maxey. Another horse was delivered and sold to the appellees for the registered animal Wiertz, or there was a mistake in the books of registration, or the application for registration. We think the jury should have had the testimony.

[2] The second and third assignments of error complain of the action of the court in excluding the testimony of J. F. Whiting, to the effect that the two notes sued on by the bank were owned by the appellant since June 30, 1909, and at the time they were sent to the Western National Bank of Hereford. The appellee objected to this evidence on the ground that the testimony was but a conclusion of the witness, which the court sustained. In this ruling we think there was no error. Ballew v. Casey (Sup.) 9 S. W. 189; Scott v. Witt, 41 S. W. 401, 402.

[3] The fourth assignment complains of the action of the court in excluding a portion of the letter dated March 7, 1910, from appellant to the Western National Bank of Hereford, transmitting the first note sued on. The letter as introduced was dated: "Mt. Pleasant, Iowa, March 7, 1910. Western National Bank, Hereford, Texas—Gentlemen: We herewith inclose notes of Messrs. F. E. Bowe, L. A. Ricketts, E. E. Ramsey, L. Gough, Verne Witherspoon, J. C. Newell and J. O. Snyder, due March 25, 1910, for $700.-00, at eight per cent. interest from March 25, 1909, for collection. Please acknowledge receipt and urge prompt payment, and oblige, [Signed] Jas. T. Whiting, President." The portion stricken out is, "We purchased this note on your recommendation dated April 9, 1909." The objection to this portion of the letter is that the statement is hearsay, self-serving, irrelevant, and immaterial. We have concluded that this statement was a verbal act, accompanying the note, and therefore admissible. It was made at a time before the maturity of the note and, in so far

as the record discloses, before the appellant had any notice that appellee claimed there was an infirmity in the consideration of the note. The record does not disclose the contention made on the part of the appellee that the horse was not registered until after this note had been sent to the bank at Hereford for collection. Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 98; Jones on Evidence, §§ 344, 583; Beaver v. Taylor, 1 Wall. 637, 17 L. Ed. 601; Wigmore on Evidence, § 1779; Avery v. Clemons, 18 Conn. 306–309, 46 Am. Dec. 323; Roebke v. Andrews, 26 Wis. 311; Amick v. Young, 69 Ill. 542; Monroe v. Culver, 2 Hill (N. Y.) 531.

In the case of Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 98, above cited, Judge Gill, said, speaking for the court: "If possession is admissible as a circumstance tending to prove ownership, the character of that possession, whether adverse or not, is certainly a pertinent inquiry. We think therefore the claim of ownership may be shown, not as evidence of the truth of the claim, but to establish the fact that such claim was made. An unlocated land certificate is a chattel. It may pass by verbal sale and delivery as any other chattel, but mere possession is not sufficient evidence of ownership, for it is not necessarily inconsistent with ownership in another." So in this case, with this clause of the letter out, the jury might infer that at that time appellant bank was acting for Hartley as its customer in sending the note to the Hereford bank for collection, and that appellant at that time did not claim to own the note. Possession of the note under such circumstances would not be evidence of ownership, but coupled with the statement, "We purchased this note on your letter of recommendation dated April 9, 1909," at once discloses the claim under which appellants then held the note. It was made at the time of sending the note before its maturity and before appellant knew of the defect in the note claimed by appellee, and in fact, in so far as this record shows, before appellees had made complaint to Hartley or any one else, that the horse was not a registered horse. Jones on Evidence, § 583, says: "It is a familiar practice to receive letters in evidence as a part of the res gestæ, and in the case of a letter inclosing a note sent from one bank to another or to show for what purpose the note was sent, even though the writer of the letter might be examined on oath." He cites, among other cases, Monroe v. Culver, supra, which we have examined and find supports the text. Wigmore on Evidence, § 1779: "One in possession of property is presumed to be the owner of it, as making more definite and significant the nature of a person's custody or occupancy, and, giving it the significance of an exclusive control and of possession in the fullest sense, the acts and declarations of claim of title by the person may be decisive and should therefore be considered for

that purpose, without, however, conceding to them any force as hearsay assertion." In support of the text he quotes copiously from the Connecticut, Wisconsin, and Illinois cases, supra.

[4] Under our statutes and the decisions of the courts of this state, it is not necessary that there be an indorsement of a negotiable note to pass the title to the same; but such assignment may be verbal or in writing. Revised Statutes 1911, art. 583; Wood v. Elwood, 90 Tex. 130, 37 S. W. 414; Bank of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 368. In this case appellant is admitted to be the owner of the note, and the only contest is as to when it became the owner. Appellee seeks to show that it did not become the owner until after maturity. The letter to the bank at Hereford shows that appellant was in possession of the note before maturity, under a claim of ownership which clearly explains the character of its possession, and such claim having been made before there was any controversy as to the validity of the note brought to the knowledge of the appellant.

[5] The clause stricken out of the letter we think, under the facts of this case, is admissible on another ground. There was a sharp conflict in the testimony as to the indorsement of the notes—whether before or after maturity. The appellees, in order to establish that appellant did not in fact own the notes before maturity, produced the evidence of two witnesses to show that the note was not indorsed until after maturity, and therefore it was not owned by appellant before maturity, and that appellant's witness and president did not tell the truth when he testified appellant purchased the note before maturity and that it was then indorsed. The witness Whiting, when he wrote the letters, shows he had the same conception of the facts before the motive could exist which was imputed to him at the trial. His declaration was therefore admissible in corroboration of his testimony upon the trial. Lewy v. Fischl, 65 Tex. 311; Hamilton v. G., H. & S. A. Ry. Co., 54 Tex. 556; Moody v. Gardner, 42 Tex. 414. The courts of this state have frequently applied this rule of corroboration in criminal cases. English v. State, 34 Tex. Cr. R. 190, 30 S. W. 233. Yet the Supreme Court, while recognizing the rule, urged that it should be applied with caution. We think the facts in this case bring it within the limits prescribed by that court. Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863.

The fifth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth assignments of error are overruled. These assignments, except the seventh and eighth, go to the sufficiency of the evidence and the failure of the court to instruct a verdict for the appellant. As the case will be reversed, we will not discuss the evidence further than to say we are not prepared to say there was no evidence upon which the jury could base a verdict.

[6] The seventh and eighth assignments complain at the action of the court in refusing special charge No. 3, requested by appellant, and in not authorizing the jury to find for appellant for the second note sued on, to mature March 28, 1911, because it was brought by the plaintiff before its maturity. It will be observed that these two notes each recite they are one of a series of two notes and the failure to pay one shall mature all, etc. The facts appear to be uncontroverted that the last maturing of the two notes was purchased by appellant before its maturity, March 28, 1911. It has been held by the courts that the purchaser of the series after maturity, or one of them, in effect purchases all after maturity. Association v. Stewart, 94 Tex. 441, 61 S. W. 386, 86 Am. St. Rep. 864; Lybrand v. Fuller, 30 Tex. Civ. App. 116, 69 S. W. 1005. We therefore hold that the court did not err in refusing charge No. 3 and did not err in failing to instruct the jury to find for appellant for the note maturing March 28, 1911.

[7] The sixth assignment of error complains of the action of the court in refusing charge No. 2. This charge in effect instructed the jury that if the horse Wiertz, purchased by the appellees, was in fact registered, yet in doing so there was a mistake as to his description as entered in the certificate of registration issued by the association, or as entered in its books, the appellant should recover. The charge probably is not verbally correct, but we think it sufficient to call attention to the issue in the case. If the horse which appellees purchased was the horse Wiertz and of the breeding represented, entitling him to registration, and he was in fact registered, but by mistake described as having a star when he had none, appellees were not damaged as alleged. The intrinsic value of the horse was the same as if the description had been perfect. The certificate of registration could be corrected, and the cost of correcting would be the measure of damage, unless there was a special damage occasioned by the failure to properly describe the horse in the registration papers, which special damage was not alleged in this case. The evidence of Hartley raises the question of mistake in describing the horse, which should have been submitted to the jury for their consideration.

For the reasons above pointed out, we think the case should be reversed and remanded for a new trial, and it is so ordered.