GRANVILLE GILLETT, RESPONDENT, *v.* THOMAS E. TAYLOR, APPELLANT.

BILLS AND NOTES—SURETIES—DISCHARGE—PAROL EVIDENCE.

1. Plaintiff brought his action upon a promissory note. The defendant set up an affirmative defense, and offered to prove that, although he had signed the note as principal, he was in fact only a surety; that at or shortly after maturity, without the knowledge or consent of defendant, the plaintiff extended

the time of payment; and that plaintiff knew, at the time the payment was extended, that defendant was only a surety. *Held*, that the defense was proper, and the evidence offered admissible.

2. Where the payee of a promissory note, after having knowledge of the relation of suretyship existing between the joint makers, enters into a new agreement with the principal debtor to extend the time of payment, or do any act to continue the liability of the surety, without his consent, the surety is discharged.

3. Where a person signs a note as maker, but is in fact a surety, and there is nothing on the face of the note to show his true relation, he will be treated and considered as a principal with respect to all who have no notice of the suretyship; but, whenever it is material in his defense to an action against him on the note, he may offer and prove by parol evidence that he made the note merely as surety, without consideration, and that such fact was known to the plaintiff before the equities through which such evidence became admissible arose.

(No. 733. Decided Oct. 21, 1896.)

Appeal from the Third district court, Salt Lake county. Hon. John A. Street, *Judge.*

Action on a promissory note by Granville Gillett against Thomas E. Taylor. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Richards & Richards,* for appellant:

The burden is not upon the defendant to show an *express* agreement between the plaintiff and another who signed the note with defendant that the defendant was accepted as a surety. Edwards on Bills, sec. 573; *Bailey* v. *Edwards,* 4 Best and S. Q. B. 761; *Swire* v. *Redman,* Q. B. Div. 536; *Wheat* v. *Kendall,* 6 N. H. 504; *Meggett* v. *Baum,* 57 Miss. 22; *Gould* v. *Butler,* 127 Mass. 386; *Mariner's Bank* v. *Abbott,* 28 Me. 280; *McMuken* v. *Webb,* 6 How. 292.

It is proper to show by parol evidence that defendant was in fact a surety or accommodation maker and that the plaintiff had knowledge of the fact. 2 Daniel on Neg. Inst., sec. 1334 and note; *Rose* v. *Williams*, 5 Kan. 489; *Perry* v. *Hudnet*, 38 Ga. 104; *Hubbard* v. *Gurney*, 64 N. Y. 460; *Harmon* v. *Hale*, 1 Wash. Ter. 423; *Grafton Bank* v. *Kent*, 4 N. H. 221; *Coates* v. *Swindle*, 55 Mo. 31; *Rarrett* v. *Ferguson*, 9 Mo. 125; *Stilwell* v. *Aaron*, 69 Mo. 539; *Irvine* v. *Adams*, 48 Wis. 468; *Barron* v. *Cady*, 40 Mich. 259, 1 Parsons N. & B. 233, 234 and Note; *Tonenel* v. *Alexander*, 85 N. C. 143; *Vary* v. *Norton*, 6 Fed. 808; *McCartney* v. *Turner*, 49 Ga. 309; *Bank of St. Mary's* v. *Mumford*, 6 Ga. 56; *Carpenter* v. *King*, 9 Met. 511.

Defendant may show by parol evidence that there was an express contract that plaintiff was to accept defendant as a surety. *Merrick* v. *Baury*, 4 Ohio St. 60; *Miller* v. *Lumsden*, 16 S. W. 161; *Fillfor* v. *Johnson*, 15 Ala. 384; *Goddon* v. *Price*, 10 Ind. 385; *Hait* v. *Baller*, 15 Serg. & R. 162; *Berry* v. *Griffin*, 10 Md. 27; *Johnson* v. *Cleaves*, 15 N. H. 322; *Stocumb* v. *Holmes*, 1 How. (Miss.)139.

The intent of the parties under all the circumstances is the controlling guide. *Belt* v. *Hawkins*, 16 S. C. 214; *Weaver* v. *Nixon*, 69 G. A. 700.

*Barlow Ferguson*, for respondent:

Cited:    55 Cal. 343; 108 Cal. 150.    See also, *Aud.* v. *Magrunder*, 10 Cal. 282; *Dave* v. *Gordaum*, 24 Cal. 157; 85 Am. Dec. 53; *Shriver* v. *Lovejoy*, 32 Cal. 575; *Dammon* v. *Pardow*, 34 Cal. 278; *Chafoin* v. *Rich*, 77 Cal. 476; *Coots* v. *Farnsworth*, 61 Mich. 497; *Stroop* v. *McKenzie*, 38 Tex. 132; Tiedman on Commercial Paper, sec. 380; *Weydell* v. *Luer*, 5th Hill, 448; *Gregory* v. *Thomas*, 20 Wend. 19; *Bank* v. *Letcher*, J. J. Marshall, 195; *Griffith* v. *Grogar*, 12 Cal. 317; *Toby* v. *Barber*, 5 Johnson 68; *Bonnett* v. *Smith*, 30 N. H. 256; *Winstod Bank* v. *Webb*, 39 N. Y. 325; *Tulman* v.

*Smith,* 85 Cal. 287; *Heath* v. *White,* 3 Utah 480; *Peters* v. *Beverly,* 10 Pet. 567.

BARTCH, J.:

This is a suit upon a promissory note, dated April 1, 1891, and signed by John W. Taylor and the appellant herein. The defendant, having set up an affirmative defense, offered to prove that, although the appellant signed the note as principal, he was in fact only a surety; that he received no part of the money for which the note was given, or any consideration for its execution or delivery; that at or shortly after its maturity the plaintiff, without the knowledge or consent of the appellant, extended the time of payment for a valuable consideration; and that the plaintiff, at the time he accepted the note, knew that this appellant was only a surety. This offer was rejected, and the proof of defendant limited to an express agreement between the payee and makers, or either of them, that the payee had accepted Thomas E. Taylor as a surety. The note was drawn up in the singular form, and there is no word of description attached to either signature. It appears that, after the note became due, John W. Taylor, the real principal, asked the plaintiff for further time, which was granted, and a new note accepted for the loan, without the knowledge of the appellant. It is also shown that the appellant's signature did not appear on the new note. The court instructed the jury that the only question in the case was whether or not there was an express agreement between the plaintiff and John W. Taylor that the new note, introduced in evidence, was accepted by the plaintiff in payment of the old note. The burden was thus upon the appellant to show, not that he was a surety within the knowledge of the payee when he accepted the note, but that there was an

14 UTAH—13

express agreement between the principal maker and the payee whereby the payee accepted the appellant as a surety.

Counsel for the appellant insist this was contrary to law, and the first question which we will consider is whether, upon suit brought on a promissory note, it is competent for one of two makers to aver affirmatively in his answer, and prove by parol, that he signed the note as surety, and that he was discharged by an extension of time given to the principal debtor by the payee with knowledge of the suretyship. The great importance of this question must be conceded, because of its bearings on business relations; and that there has been some confusion in the authorities regarding such a defense must be admitted. This doubtless arose from the fact that some of both the English and American courts entertained doubts whether such a defense could avail in a court of law. In *Pooley* v. *Harradine*, 7 El. & Bl. 431, Mr. Justice Coleridge, holding such a defense good in equity, said: "In the more recent cases at law, however, the rule in question has apparently been treated as arising out of the original contract with the creditor; and, if this was a plea of a legal defense, we would probably have felt bound by those authorities, and have left it to a court of error to consider the whole question, taking into their consideration whether the same rule in such matters ought not to exist in courts of law and equity, and to decide, if there be a difference, what the rule should be. As we are, however, called upon to deal with this case as if we were sitting in a court of equity, we think we ought to decide it according to what we believe to be the doctrine in courts of equity." In *Rees* v. *Berrington*, 2 Ves. Jr. 540, Lord Loughborough said that the form of the security forced these cases into equity, because, when they were bound

jointly and severally, the surety could not aver, by pleading, that he was bound as surety. And Mr. Chief Justice Spencer, in *King* v. *Baldwin,* 17 Johns. 384, disagreeing with this proposition, said: "Now, we could not assent to his lordship's proposition that the fact of a man's being bound as a security could not be averred at law, if it became material to a legal inquiry; for we understood the rules of evidence to be the same in both courts, and we in vain sought for the principle which allowed the inquiry in a court of equity and denied it in a court of law." In *Archer* v.*Douglass,* 5 Denio 509, Mr. Chief Justice Beardsley, delivering the opinion of the court, said: "The fact, when ascertained, if sufficient in equity, is equally valid as a legal defense. The doubt is as to the reception of parol evidence to prove the fact in a court of law." *Strong* v. *Foster,* 17 C. B. 201; *Pintard* v. *Davis,* 21 N. J. Law 632; *People* v. *Jansen,* 7 Johns. 332.

The main objection urged against such a defense at law appears to be that it is an attempt to vary the terms of a written instrument; but, if this objection be sound, it will obtain equally in equity, because at law and in equity the same general rules of evidence are applied. It is true that, in an action at law, the terms of a written instrument cannot be varied by parol evidence; but this is equally true in an action in equity, except in cases where an action or defense is maintained under some recognized head of equity jurisdiction. It seems difficult to ascertain a good reason why, in a case of the character under discussion, a court of law should reject evidence which would be admissible in a court of equity. Whatever distinction may, under the old system, have obtained respecting the admission of evidence at law and in equity, it cannot be maintained in courts of both legal and equitable jurisdiction, as constituted under the Code. Without, however, invoking the rules of equity, it seems clear

that the evidence admissible under such a defense does not vary the terms of a written instrument, nor change the legal effect thereof. The requirement that the payee, with knowledge of the suretyship existing between the co-makers, shall not do any act, without the knowledge and consent of the surety, which will prejudice the rights of the surety against the principal, in no way impairs the obligations of the contract. It simply prohibits the creditor who has knowledge of the suretyship from ingrafting a new agreement into the contract without the consent of him whose rights will be injuriously affected thereby. Whether a co-maker is principal or surety, the contract is the same. In either case there is a. binding obligation to pay, and the presumption is that all the makers are equally liable to the creditor. This presumption, however, may be rebutted, by equities affecting the creditor, with knowledge of the true relation existing between the debtors at the time he performs the act by which he injuriously affects the rights of the surety. The rights of the surety arise out of the circumstances of the case, and do not depend upon the written instrument. The fact that one of the debtors is a surety is collateral to the contract, and hence may be shown by extrinsic evidence. If a co-maker should add the word "surety" to his signature, such signature would not affect the contract, as between him and the payee. His liability to pay would still be absolute, the same as if there were nothing on the face of the instrument to indicate his relation to the principal maker. In either case the obligation to the creditor would be effectual until, with knowledge of the relation of the debtors, the creditor had done some act which had injuriously affected the position and rights of the surety. The principal and surety being equally liable to the payee, the surety has the undoubted right, at the maturity of the note, to request the payee to enforce payment,

or to pay himself, and then be placed in the position of the payee, and be permitted to sue the principal. Such a course may be absolutely necessary as a protection of the surety against the insolvency of the principal debtor. If the payee, with knowledge of the suretyship, has voluntarily placed himself in such a position that neither he nor the surety can enforce payment, there seems to be no sound reason why the payee should longer have recourse against the co-maker, because, under such circumstances, the case falls within the general doctrine relating to principal and surety, whereby the surety is discharged. The payee's action may deprive the surety of a valuable right, —the power to save himself by bringing suit against the real principal. In such case, whether the creditor received the note with knowledge of the suretyship is immaterial. If he had such knowledge at the time when he did the act which injuriously affected the rights and altered the position of the surety, the surety is discharged. All that justice to the creditor requires is that such contract shall not prejudice his rights against the surety until he has notice of the relation between the makers. After he has such notice, the law will not permit him to enter into a new agreement with the principal debtor to extend the time of payment, or do any act to continue the liability of the surety, without his consent. The creditor cannot keep the surety bound beyond the terms of his contract without consulting him, and this produces no inconvenience to, and imposes no hardship upon, the creditor. It follows that evidence is admissible which shows that the creditor, affected by knowledge of the true relation of the debtors, has undertaken to continue the liability of the surety beyond the terms of his contract, without his assent, by a new agreement with the principal debtor. The rule appears to be that, where a person signs a note as maker, but is in fact a surety, and there is nothing on

the face of the note to show his true relation, he will be treated and considered as a principal, with respect to all who have no notice of the suretyship, but that, whenever it is material in his defense to an action against him on the note, he may aver, and prove by parol evidence, that he made the note merely as a surety, without consideration, and that such fact was known to the plaintiff before the equities through which such evidence became admissible arose.

This view of the law, herein expressed, we think, is supported by the weight of authority, both in England and in this country. In *Bailey* v. *Edwards*, 4 Best & S. 761, Mr. Justice Blackburn, speaking of this doctrine, said: "The principle has been imported from the courts of equity into those of law." And Mr. Justice Coleridge, in *Pooley* v. *Harradine, supra*, speaking of the right of the surety to pay the debt when due, and to be subrogated to the right of the creditor to sue the principal, said: "Now, does this right of placing himself, as it is said, in the shoes of the creditor, depend on a prior contract between the creditor and surety, or on an implied duty of the creditor not to injure the surety's rights when he knows the relation subsisting between him and his principal? We do not see that, by the doctrine asserted in courts of equity, the primary liability is at all altered. In truth, the defense, either at law or in equity, does not arise by any alteration of the original contract, which, indeed, it assumes and relies on in its original terms, but that the creditor cannot fairly or equitably sue the surety where, knowing of the existence of the relation of suretyship, he has voluntarily tied up his hands from proceeding against the principal." In *Guild* v. *Butler*, 127 Mass. 386, Mr. Chief Justice Gray said: "The fact that one debtor is surety for the other is no part of the contract with the creditor, but is a collateral fact, showing the relation

between the debtors, and, if it does not appear on the face of the instrument, this fact, and notice of it to the creditor, may be proved by extrinsic evidence." So, in *Bank* v. *Abbott*, 28 Me. 280, Mr. Justice Wells, delivering the opinion of the court, said: "Where the creditor makes an arrangement with one of several debtors, extending the time of payment of the debt, the others, by proving that such arrangement is injurious to them, because they are sureties, do nothing to impair the validity of the original contract, or to vary its terms. The original contract remains in full force and effect.' But the right to ingraft the new matter is defeated by the proof of a relation not exhibited by the note. The testimony to show that the defendants were sureties was properly admitted. It appears to be a well-settled rule of law that, where the creditor, by a contract with the principal, extends the time of payment, upon a sufficient consideration, without the consent of the surety, the latter is discharged." In *Hubbard* v. *Gurney*, 64 N. Y. 457, Mr. Chief Justice Church said: "If the word 'surety' had been added to the name of the defendant, it is conceded that the defense sought to be interposed would be available in any court; and yet that word, as we have seen, would not affect the contract. The fact, proved by extrinsic evidence, and that the cred-itor had knowledge of it, is as potent as if added to the name of the surety; and it is potent, not in varying the contract, but in imposing certain duties and obligations upon the creditor in his subsequent dealings with the principal debtor in respect to the contract." So, in *Meggett* v. *Baum*, 57 Miss. 22, Mr. Justice Campbell, deliv-ering the opinion of the court, said: "It has been the established doctrine in this state that one of several makers of a promissory note or a writing obligatory is not precluded, by the fact that he appears on the instru-ment to be a principal, and primarily bound, from aver-

ring and proving that he is a surety, and entitled to be discharged by the act of the creditor in so dealing with the principal as to discharge him as a surety; and this is the constant practice in courts of law. * * * The holder of the paper, having no knowledge except that imparted by it, may regard the parties to it as bound accordingly; but, if he has knowledge of the actual relations between the parties, he has no greater right in the one case than in the other to deal with the real principal in such way as to discharge the surety." 1 Pars. Notes & B. 234; *Wheat* v. *Kendall*, 6 N. H. 504; *Barron* v. *Cady*, 40 Mich. 259; *Harris* v. *Brooks*, 21 Pick. 195; *Ward* v. *Stout*, 32 Ill. 399; *Strong* v. *Foster, supra; Swire* v. *Redman*, 1 Q. B. Div. 536; *Greenough* v. *McClelland*, 2 El. & El. 424; *Bank* v. *Kent*, 4 N. H. 221; *Harmon* v. *Hale*, 1 Wash. T. 422; *Orvis* v. *Newell*, 17 Conn. 97; *Rose* v. *Williams*, 5 Kan. 483; *Vary* v. *Norton*, 6 Fed. 808; *Carpenter* v. *King*, 9 Metc. (Mass.) 511; *Coats* v. *Swindle*, 55 Mo. 31; *Barry* v. *Ransom*, 12 N. Y. 462; *Rees* v. *Berrington*, 2 Ves. Jr. 540; *Lauman* v. *Nichols*, 15 Iowa, 161.

In the case at bar the defense averred, and offered to show by proof, that, while the appellant had signed the note in question as maker, he was in fact only a surety; that he received no part of the money, the loan having been made for the benefit of his co-maker; and that the plaintiff, knowing the true relation which existed between him and his co-maker, for a valuable consideration extended the time of payment to the principal without the appellant's knowledge or consent. It is obvious that the evidence offered is admissible, because, if the facts indicated were established, they would show that the payee had undertaken to continue the liability of the appellant beyond the terms of his contract, and this would be a complete defense to the action; so, if it were shown that the plaintiff, with the knowledge of the sure-

tyship, had accepted the new note, due one year after date thereof, in full payment of the old one, without the knowledge and consent of the appellant. It is apparent that the exclusion of the evidence in question was error, and an inspection of the record shows that the case was tried under a mistaken view of the law.

There are various errors assigned, but, as the cause must be reversed, a further discussion is not deemed necessary. The case is reversed, and remanded, with directions to grant a new trial and proceed in accordance with this opinion.

Zane, C. J., and Miner, J., concur.