[S. F. No. 9219. In Bank.—January 28, 1921.]

[ANDREA FIGARI, Appellant, v. G. B. OLCESE et al.,
Defendants; EMILIO OLCESE, Respondent.

[1] PROMISSORY NOTE—SIGNATURE AS WITNESS—KNOWLEDGE OF PAYEE
—NONLIABILITY AS MAKER.—Where a person signed his name to
a promissory note directly under the name of the admitted maker
with knowledge on the part of the payee that he had been asked
to sign the note as a witness, and before signing wrote the word
"witness" immediately in front of his signature, he is not bound
as a maker.

[2] ID.—SIGNING OF NOTE AS APPARENT MAKER—REAL CAPACITY—
PROOF BY PAROL EVIDENCE.—One who has joined apparently as a
maker of a note may show by parol evidence, as against the payee,
that he has signed with the knowledge of the payee in a different
capacity and with a different liability, where such facts are
pleaded.

[3] EVIDENCE—ADVERSE PARTY AS WITNESS—CONSTRUCTION OF CODE.—
Section 2055 of the Code of Civil Procedure, which provides that a
party calling and examining as a witness an adverse party shall
not be bound by his testimony, does not mean that such testimony
may not be given its proper weight, but that the party calling
such witness shall not be concluded from rebutting his testimony,
or from impeaching the witness.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. James M. Troutt, Judge.
Affirmed.

The facts are stated in the opinion of the court.

Frank Schilling for Appellant.

William A. Kelly for Respondent.

THE COURT.—Plaintiff brought this action to recover on
a promissory note purporting to have been executed by the
defendants.

The question here presented is whether the respondent,
Emilio Olcese, signed the note as a maker, or merely as a
witness to the signature of his codefendant, G. B. Olcese.

The trial court found that respondent signed the instru-
ment only as a witness.

The appeal is from the judgment in respondent's favor, and is based upon the contention that the above finding is not supported by the evidence.

The instrument, as reproduced in the record, shows the names of both defendants in the usual place of signature by the makers of a promissory note. The name of respondent, Emilio Olcese, is directly under that of his codefendant, an admitted maker of the note. The only distinguishing feature is that the word "witness" appears immediately in front of respondent's signature.

The undisputed facts are that the plaintiff, Figari, loaned one thousand three hundred dollars to the defendant, G. B. Olcese, and received this note as evidence of the indebtedness. The defendant, Emilio Olcese, is the son of the other defendant, and at the time of this transaction was twenty-six years old and was in the employment of his father in the latter's grocery-store, and had no personal interest in and received no part of the borrowed money.

Figari was about fifty-six years of age and an Italian. Both he and the elder Olcese had an imperfect knowledge of English. The plaintiff was unable to read or write the English language.

Although the testimony is conflicting on the point at issue, plaintiff's testimony is that he had been given to understand by the elder Olcese that the note was to be signed by both the father and son and that he accepted the note in the belief that both had signed it as makers and did not know that Emilio Olcese had written the word "witness" before his name until many months after the note was executed. The two principals, Figari and Olcese, went to a notary and had the note drawn up. It does not appear clearly whether the elder Olcese signed it at the notary's office or later. At any rate, the deal was not closed there, but the parties met the next morning at the office of Olcese over his store, at which time and place Figari produced his money to complete the loan. It is at this point that the matter in controversy arises as to Emilio Olcese's relation to the transaction. Figari says that he went the next morning to get the note. He testifies: "Emilio, the son, gave me the note." "I say, 'I want to see you put your name.' He say, 'I put it all ready.' I say, 'I like to see it. Some time I can't read, I like to see you put your name.' He told his father,

'He wants me to put my name again,' and the father say, 'Yes, put it again.' " He further testified in this connection that the son then took the pen and retraced his name and handed him the note. There was other testimony of Figari indicating that it was agreed between him and the elder Olcese that the son, and perhaps the wife, was to join in signing the note. At any rate, it is enough to say, from plaintiff's standpoint, that Figari's testimony, standing uncontradicted, would sufficiently establish Emilio's liability as a maker of the note, and had the trial court found accordingly such finding might well be held conclusive.

Both the father and the son, however, dispute this version of the transaction. On this controverted point the testimony of the elder Olcese, in substance, is as follows: "My son was present when the money was delivered. He was outside of the store, and I told my son, Mr. Figari told me, 'I would like to see your son and I give you the money,' so I called Emilio to come up and Emilio came up and Mr. Figari looked at the money and he told me, 'Now, you got the money here,' and he say, 'Your son can sign.' He says, 'You have your son sign this note to see I give you the money.' " "Well, my son was there and I told him myself to sign the note." Q. "But you have just stated that Mr. Figari said to you in your son's presence to have your son sign as a witness." A. "Mr. Figari told me, and he said he was telling me. He told me first, my son was not present and I called him up and I told him to come up to the office. . . . Mr. Figari came to my office and counted the money and put it on the desk, and after he got the money counted and before I took the money he asked me, 'We are here alone and I give you the money.' He would like to have somebody see that I give you the money, and he says, 'Is your son downstairs?' and I said, 'Yes,' and called my son up, and I says, 'I got some money here and I would like to have you come up,' and I told him—he don't know Figari, I told my son, 'I got some money and I show it and he loan some money and I want you to come up and see the man lend the money.' Mr. Figari was present." Q. "Did you hear your son testify here a little while ago that Mr. Figari was not present, that he was on the outside?" Mr. Kelly: "That is not the testimony. The testimony of both witnesses is to the effect that Mr. Olcese went outside

and called Emilio and brought him into the room where the money was and had Emilio sign the paper in the presence of both of them." The Court: "That is the testimony." Q. "At what particular place did you ask your son Emilio to come and sign the note?" A. "Right there in front of the money, in my office. . . . In the presence of Mr. Figari I asked my son to sign the note to witness, so Figari says, so Figari could see him loan me the money, and my son sign as a witness, and Mr. Figari turned around, and he didn't see my son do the writing and he said to my son, 'I like to see you sign. I like to see you sign your name· next;' and my son says, 'Yes, I have signed that.' Mr. Figari never say nothing about a witness, he never mentioned anything about seeing the money turned over and like to see him sign, like a witness. And he never say anything else. My son don't have anything to do with the business."

This testimony is confusing and perhaps contradictory, but there is nothing in it to indicate that Emilio Olcese had any intimation from either his father or the plaintiff that he was signing other than as a witness. It would appear from the testimony of this witness that Figari had no conversation with Emilio as to the capacity in which he was to sign the note; that his communication in that regard was entirely with the father, but that the statement was made to the son in Figari's presence that he was asked to sign as a witness.

The respondent's own testimony on this point is more explicit. His testimony in substance is as follows: "The first time I saw Mr. Figari to know him was when I signed the note. I knew nothing about the negotiation of the note. I saw the money delivered to G. B. Olcese. . . . Mr. G. B. Olcese came outside, and I saw him; he was borrowing some money from Mr. Figari. Mr. Figari was upstairs in the office and he wanted me to sign the note as a witness. Mr. G. B. Olcese asked me to sign the note as a witness that he took the money. I was outside handling potatoes and stuff and Mr. Olcese asked me to sign the note, as a witness. I believe the note was signed by my father when I signed it. I signed right under his name. I saw him sign it. He signed first and I signed afterward. Mr. Figari was there, right between me and my father. He told me to go over it again and I went over it. He says, 'Let me see you sign it,' and· I ˙went over it again and signed the note. I don't

know whether he saw me sign it the first time; he was there. He never asked me to go over it again. I ran my pen over my name a second time. Mr. Olcese asked me to sign the note. Figari never asked me to sign the note. I never signed the note for Figari. I went over it when he asked me to go over it. I will show you just how it was done. Mr. G. B. Olcese came out and asked me if I would sign the note as a witness and I told him yes. I come upstairs, took the pen, and signed that note. Mr. Figari was there, and he says, 'Let me see you sign the note, go over it.' Q. Mr. Figari did not ask you to sign the note as a witness? A. Not at all, he asked me to go over it. I never had any experience with a promissory note. That was the first note I seen. I had never had any experience with promissory notes at that time. I did not know anything about whether a promissory note needed to be witnessed. The first time I knew anything at all about the fact of a loan was when I was asked to go up where the note was signed."

It seems to be conceded that the respondent wrote the word "witness" before his name when he signed the note. The only reference in the evidence to this point is the following questions by plaintiff's attorneys and respondent's answers thereto: "Q. And you signed the word 'witness' in front of your name? A. I know what I signed, and he had the note there and I signed. Q. So when you put your name to the note and put in front of it 'witness' you are not positive whether or not you had seen your father sign the note? A. Oh, yes. G. B. Olcese's name was on the note before I signed it."

It also appears from other evidence that the word "witness" was written before respondent retraced his signature at plaintiff's request.

It is argued in behalf of appellant that when the respondent, at Figari's statement that he wanted to see him sign, retraced his signature without retracing the word "witness," it was a new and unqualified signing of the note. No such inference can be drawn from this circumstance. Respondent had been told, according to the testimony, in the presence of Figari, that he was to sign as a witness. If he signed as a witness under these circumstances, he had a right, when told by Figari that he wanted to see him sign, to assume that he was retracing his signature for the same purpose and in the same capacity that he originally wrote it.

Of course, it seems improbable that Figari should have been so insistent upon seeing the signature made if it was only to witness the making of the note by the elder Olcese. But that is not the point. The controlling circumstance is that Emilio Olcese was acting with the understanding that he was only signing in the capacity of a witness, and there was nothing in the fact of this request to re-write his name calculated to change the situation.

[1] There is no doubt under the law that if he had subscribed his name without qualification and without notice or knowledge on the part of Figari that he was only intending to witness his father's execution of the note, he would be bound as a maker; but such is not the situation here. He was not in any way a party in interest. If the trial court believed the testimony of the defendants, as it apparently did, Emilio Olcese went into his father's office where the note was being executed with no other idea in his mind than that he was being asked to put his name to the paper merely as a witness, and that both parties so understood. He was told by his father in Figari's presence that the latter wanted him to see the money delivered and to sign as a witness. He made his own understanding of the matter plain by writing the word "witness" immediately preceding his signature. It is true that Figari testified that he could not read or write the English language, but the court finds that this fact was not known to respondent. The only evidence tending to show such knowledge was the remark testified to by Figari that in asking respondent to again sign his name he gave as a reason the statement "some time I can't read." Respondent had a right to assume not only from what his father had told him in Figari's presence, but from what he had signified on the note itself, that it was understood by Figari that he was signing as a witness. Under these circumstances the request that he sign again, or that he retrace his signature, so that Figari could see it written, would not carry any different significance as to what was expected of him than attended the original signature. [2] Even where one has joined apparently as a maker of a note, he may show by parol evidence, as against the payee, that he has signed with the knowledge of the payee in a different capacity and with a different liability where, as here, such facts are

pleaded. (Civ. Code, sec. 2832; 3 R. C. L., p. 1138; *Kelley* v. *Gillespie*, 12 Iowa, 55, [79 Am. Dec. 516]; *Spencer* v. *Alki Point Transp. Co.*, 53 Wash. 77, [132 Am. St. Rep. 1058, 101 Pac. 509]; *Gillett* v. *Taylor*, 14 Utah, 190, [60 Am. St. Rep. 890, 46 Pac. 1099]; *Windhorst* v. *Bergendahl*, 21 S. D. 218, [130 Am. St. Rep. 715, 111 N. W. 544]; *Farmers' N. G. Bank* v. *Slover*, 60 Cal. 387; *Casey* v. *Gibbons*, 136 Cal. 368, [68 Pac. 1032].) This is true for the purpose of showing that an apparent principal is only bound as a surety notwithstanding the appending of the word "surety" after the signature does not in itself change the liability of the party so signing (*Aud* v. *Magruder*, 10 Cal. 282; *Southern Cal. etc. Bank* v. *Wyatt*, 87 Cal. 616, [25 Pac. 918]). It surely follows that where the signer, with the knowledge and assent of the payee, has signed only as a witness and has qualified his signature on the note itself by so significant a designation as the word "witness," he may be permitted to show that his name was written and accepted in that capacity alone.

It may be admitted that it is an unnecessary and unusual precaution to have the execution of a promissory note witnessed, but it appears that all of the parties to this transaction were unfamiliar with business customs and requirements, and the respondent testified that this was his first experience with a promissory note.

If it is assumed, as the trial judge had a right to assume from the evidence, that the respondent was acting in good faith and that the testimony of both defendants was to be accepted as true, there is no justification for setting aside the findings and judgment of the trial court, as affirmed by the district court of appeal.

It is wholly a matter of the credibility of the witnesses, which is a consideration exclusively within the province of the trial court.

There could be no question about the matter were it not for the unusual circumstance of having a witness to such an instrument, the apparent inexperience and ignorance of the appellant, and the further fact that by the time the payment of this note was due the elder Olcese had gone through bankruptcy, and the son had succeeded to the position of financial responsibility. But even in this particular the respondent's explanation is plausible, and he testifies

that it was not until after his father's financial failure and until long after the note was due that appellant made any claim upon respondent as a maker of the note. It is something, too, of a testimonial to the good faith of the elder Olcese that about $250 was paid by him on this note since his discharge in bankruptcy.

[3] There is no merit in appellant's objection that no testimony was taken in behalf of defendants, because of the fact that the defendants were called only as plaintiff's witnesses. Section 2055 of the Code of Civil Procedure provides that a party calling and examining as a witness an adverse party "shall not be bound by his testimony" and that the testimony of such adverse witness "may be rebutted by the party calling him." This provision does not mean that such testimony may not be given its proper weight, but merely, as it declares, that the party calling such witness shall not be concluded from rebutting his testimony, or from impeaching the witness. (*Dravo* v. *Fabel,* 132 U. S. 487, [33 L. Ed. 421, 10 Sup. Ct. Rep. 170, see, also, Rose's U. S. Notes].) In other words, such testimony is to be treated as though given on cross-examination.

The findings of the court sufficiently cover all the material issues raised by the pleadings.

The judgment is affirmed.

Sloane, J., Olney, J., Shaw, J., Angellotti, C. J., Wilbur, J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.