[Civ. No. 16667. First Dist., Div. Two. Apr. 16, 1956.]

JOHN SCOTT, a Minor, etc., Appellant, v. DEL MONTE PROPERTIES, INC. (a Corporation) et al., Respondents.

Irving Sugarman and Bernheim, Sugarman & Gilbert for Appellant.

Hoge, Fenton & Jones for Respondents.

KAUFMAN, J.—Plaintiff appeals from a judgment after jury verdict for defendant Del Monte Properties, Inc. in an action for personal injuries alleged to have been sustained by John Scott, a minor. Motion for new trial was made and denied.

John Scott, who was 15 years of age at the time of trial, was a member of Sea Scout Ship 128 of Carmel, California. On September 6, 1953, together with other members of his sea scout ship, he went onto Del Monte Properties to assist with shore boat duty for the Stillwater Cove Yacht Club whose members were engaging in the Labor Day regatta. The Stillwater Cove Yacht Club used the pier and other facilities of respondent's Beach Club each year during this regatta. Mr. Geisen, Commodore of the Stillwater Club, testified that this was an independent club which on race days was permitted to use the Del Monte facilities. Stillwater Cove is adjacent to the 17 Mile Drive which is on respondent's property, and admission is charged for the use of this roadway, but appellant did not pay the fee.

Respondent maintains a publicity department in connection with Del Monte Lodge, which gives out releases to local and

more distant newspapers concerning events of interest occurring on respondent's premises. The Labor Day regatta was so publicized.

The Stillwater Yacht Club as the sponsoring body of Ship 128 of the Sea Scouts permitted arrangements to be made by officers of that scout group for appellant and other scouts to be present at the regatta. There was no evidence of any contact between any officer or agent of respondent and appellant, nor of any contact between the Stillwater Club and respondent. The practice of using Del Monte's pier during these races evidently had gone on over a period of years.

An employee of respondent, Itoshi Kono, was present at Stillwater Cove on the day of the accident. He was described as a "kind of man Friday for the Yacht Club." He took people out to the boats, ran errands and was a general handyman. On race days the yacht club men tipped him for his assistance. He was a regular summertime employee of respondent from whom he received his salary. He stated that he was asked by the yacht club to assist. An officer of respondent testified that employees were permitted to use free time to assist the yacht club during the regatta.

The pier from which John Scott fell was between 300 and 500 feet long, and about 10 to 20 feet above low water. There were removable sections of railing at the end, permitting the pier to be used for lowering or raising small boats into or out of the water. There was a metal spike between 3 and 7 inches in length which was inserted in a bracket at the base of this rail when it was in place.

At sometime prior to the accident Kono had removed this rail and laid the spike on the pier. During the regatta it had been replaced by the sea scouts, appellant being one of those who assisted. Kono noticed that the rail was in place about one-half hour prior to the accident. He said that from his position, ten to thirty feet from the end of the pier, it would have been possible to notice if the spike had been missing, but his attention had not been focused on that area.

Shortly after lunching at 12:30 p. m. John Scott went to the end of the pier and stood with his hands against the railing looking down at a United States Coast Guard cutter which was moored to the end of the pier. Appellant testified that he intended to go down the vertical ladder at the end of the pier and board the cutter, but the railing gave way and he fell some 15 feet to the deck of the cutter. The railing fell on top of him.

Two of respondent's witnesses testified that the railing could only be dislodged if it was pulled up and back. One of these witnesses, the engineer who had been in charge of its construction, assumed that the railing had been properly set in the groove. The other witness was a boy who observed the rail three days after the accident.

Appellant suffered a fracture of his left sinus and antrum, a fractured wrist, a laceration of his back and injury to soft tissue of his left side.

Appellant contends that prejudicial error was committted by the trial court in denying him the right to cross-examine Itoshi Kono under section 2055, Code of Civil Procedure. Kono had been an employee of respondent on the day of the accident. He was a student at San Jose State College, who had worked for respondent during the summer vacation of 1952, 1953, the summer when the accident occurred, and 1954. His deposition had been taken on August 29, 1954. At the time of trial, October, 1954, he was in his final year of college. He had last worked for respondent on September 20, 1954. No arrangement had been made for him to return the following summer to respondent's employ. ▇▇▇ Appellant had to call Kono as his own witness because the court refused to permit him to be called as an adverse witness because he was not then employed by respondent.

▇▇▇ Section 2055, Code of Civil Procedure permits an employee of a party to be examined as an adverse witness. Respondent maintains that the court was correct in interpreting the statute to mean that the witness must have employee status at the time of trial, whereas appellant argues that the statute includes those who are not presently employees but who were such at the time the transaction occurred out of which the lawsuit arose. We agree with appellant's contention.

A case in point is *Wells* v. *Lloyd,* 35 Cal.App.2d 6 [94 P.2d 373]. In that case the trial court refused to allow examination of a witness by appellant under section 2055, sustaining an objection on the ground that the witness at the time of trial was no longer an employee of the defendant bank. The District Court of Appeal held that the witness, who was an officer of the bank had written an important letter involved in the transaction, could be examined under section 2055, Code of Civil Procedure, and that appellant was entitled to invoke said section against the defendant "by cross-examining defendant's officer and agent, even though the latter prior to

the trial terminated his official connection with such corporation.'' The court reasoned that if the statute were· not so interpreted the benefits of the statute could be nullified by a party by simply terminating the relationship existing between it and the witness prior to trial, and said that the section ''was undoubtedly intended to provide for cross-examination of any officer whose official position with the corporation put him in possession of any matters material to the cause on trial.'' The statute was amended subsequent to the time this case was decided to include agents and employees. The cited case was reversed on another ground, but the court deemed it necessary to decide this point for the guidance of the trial court upon retrial. A petition for hearing in the Supreme Court was denied. The same reasoning was used in *Golden State Co.* v. *Superior Court,* 25 Cal.App.2d 176 [76 P.2d 728], a case in which a writ of mandamus was granted commanding the Superior Court to order a witness to give his deposition. The witness had been a managing officer of the corporation of whose estate the plaintiff was trustee in bankruptcy. It was alleged that the facts out of which the case arose occurred while he was such officer. The court noted that while the statute (Code Civ. Proc., § 2021, subd. 1) was in the present tense, ''it was undoubtedly the intention of the legislature to afford the parties to the litigation means of obtaining in advance of trial information concerning the issues so that they might properly prepare for trial'' and that the purposes of the statute would be defeated if a corporation could remove officers or employees ·pending litigation. It is true that the parties had stipulated in the cited case that the deposition might be taken, and the concurring opinion which disagreed with the interpretation given to the statute by the majority, based its concurrence in the issuance of the writ on that ground.

Although it is true as respondent argues, that when a statute is so clear that reasonable minds cannot differ as to the meaning of the words used, there is no choice but to enforce the statute as it is written (*Estate of Sahlender,* 89 Cal. App.2d 329 [201 P.2d 69]), still it is a ''cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment.'' (*Union Oil Associates* v. *Johnson,* 2 Cal.2d 727, 734 [43 P.2d

291, 98 A.L.R. 1499]; see *Associated Boat Industries* v. *Marshall,* 104 Cal.App.2d 21, 23 [230 P.2d 379].)

In view of the above decisions, it appears that appellant had the right to examine Kono as an adverse witness under section 2055, Code of Civil Procedure. Although the ruling was erroneous, was it prejudicial? Appellant maintains that it was, setting forth certain instances at the trial where the testimony of Kono was evasive and nonresponsive, and where, he contends, had he been able to cross-examine him, he might have elicited more pertinent evidence.

Counsel for appellant asked the witness, "Does the Stillwater Cove Yacht Club use the Beach Club (the club in which respondent had an interest) for a club house? Kono answered "I can't say." Counsel for respondent said, "Well, if he knows," but the court cut further inquiry off by saying "He has answered." It is to be remembered that Kono worked three summer vacations on these premises and each year assisted the yachtsmen at the regatta. Appellant argues that this question was directed toward determining the relationship between the Stillwater Club and Beach Club, and had a bearing on whether or not appellant was an invitee of the respondent. This was an important issue in the case. In fact, the jury requested further instructions on the distinction between invitees and licensees.

Again Kono was asked if any of the sea scouts operated any of the shore boats on September 5, 1953. He answered, "I suppose they did, but I couldn't say for sure." Appellant claimed surprise but the court, having compared this answer with Kono's deposition, decided it was not surprise nor a matter of impeachment. Kono was allowed to refresh his recollection by reading his deposition and then answered, "I can't recall." When he was later asked if he had removed the railing at the end of the pier on September 5th or 6th he said he believed he did, but answered, "I can't say" as to whether it was the 5th or the 6th. He then said it could have been on the 4th, 5th or 6th. When asked if he had ever replaced that railing, after having removed it on one of those days, he answered, "Can't remember." To the question of how long before the accident he had observed the railing in place, he responded, "Can't say," but finally admitted it was at least a half hour.

Later counsel for appellant examined Kono as follows: "Q. Now had you had anything to do with putting up the fence, let us say, at any time from the morning of September 6

up until the time the accident happened? A. I'll say partly. Q. What had you done toward putting up the fence that morning? A. Not too much, I suppose. The Court: Just tell us what you had done. You answered another question 'partly'. The Witness: Well, I saw to it that, more or less, that it was in place. By Mr. Sugarman: Q. Did you—— A. (interrupting) By—when you ask me that question—did you see it before—and I said half an hour, well, I saw that it was in place, so—— The Court: (interrupting) You saw it was in place? A. Yes. By Mr. Sugarman: Q. All right. Now tell me, did you physically touch it that morning? A. Perhaps. Q. Can you tell us what your best recollection is as to whether or not you had touched that fence on the morning of the accident? A. I cannot recall.''

Appellant maintains that having been foreclosed from cross-examination or impeachment on the crucial point of the witness' relation to the railing shortly before the accident, he was prejudiced by not being able to ask leading questions of the witness, through which he might have been able to bring out negligent acts, knowledge and responsibility which could have been imputed to respondent.

The vice-president of respondent testified that no one was employed to assist the yacht club. Kono was asked if he was hired for shore boat service in 1953 and replied that, "when they asked me to I helped them out" meaning, apparently, the yacht club. When he was asked the question again, he answered, "No." Appellant claimed surprise and showed that in his deposition he had stated that he was hired mainly for shore boat service. Appellant because he had to use Kono as his own witness instead of as an adverse witness could not by cross-examination develop the theory that respondent was sufficiently interested in the yachting activity to employ a person for this express purpose. Furthermore, the deposition of this witness gave appellant ground for believing that such evidence could be elicited if he could have indulged in an exploratory cross-examination.

In *Lawless* v. *Calaway*, 24 Cal.2d 81 [147 P.2d 604], the judgment granting a nonsuit was reversed solely because the court below was held to have committed prejudicial error in limiting the scope of the examination of defendant who was called as an adverse witness under the provisions of section 2055 of the Code of Civil Procedure. It was held in that case, a malpractice action, that appellant should have been

allowed to examine defendant doctor as an expert in regard to the standard of skill and care exercised by doctors in that community. The court stated that an offer of proof was unnecessary where the court had declared an entire class of evidence inadmissible, and noted further that "examination of a party under section 2055 is often exploratory and it would be unreasonable to require an offer of proof under such circumstances." The court disapproved certain cases suggesting a different rule.

Respondent maintains that the scope and extent of examination of witnesses rests largely in the sound discretion of the court, and notes that several of the authorities cited by appellant were cases where reversals resulted because the scope of examination was unduly limited under section 2055 (*Lawless* v. *Calaway, supra*; *Estate of Carson*, 184 Cal. 434 [194 P. 5, 17 A.L.R. 239]), or dealt with the right to impeach such a witness or the effect of evidence so obtained on a motion for directed verdict. (*Figari* v. *Olcese*, 184 Cal. 775 [195 P. 425, 15 A.L.R. 192]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529].) However, if it has been considered prejudicial error to unduly limit the scope of examination under the above section, it is certainly prejudicial error to forbid such examination altogether in cases where a party has a right under the statute to cross-examine an adverse witness. (See *Alford* v. *United States*, 282 U.S. 687 [51 S.Ct. 218, 75 L.Ed. 624].)

In *MacGregor* v. *Kawaoka*, 132 Cal.App.2d 407 [282 P.2d 130], judgment was reversed solely because appellant was denied the right to examine an accommodation maker of a promissory note in an action against him and the maker of said note. The court held that no offer of proof was necessary, that the statute was remedial in character and should be liberally construed in order to accomplish its purpose, that it conferred a substantive right which might not be denied to a party.

Counsel for appellant having examined the witness Kono as his own witness then objected to counsel for respondent cross-examining him, asserting that Kono was originally respondent's own witness, and the court said to respondent's counsel: "For all practical purposes, Mr. Hoge, you've got a deposition in your hand which you announce you took and on—I would suggest that you refrain from leading questions in cross-examination." Counsel protested that "No matter how close the relationship may be to the client or employee,

another party places him on the stand, I'm entitled to cross-examine him. I will ask for that leave to do so." The court granted that he had such a right, and he proceeded to ask leading questions of the witness emphasizing the purely voluntary nature of Kono's services to the yacht club, for example, "if some member of the Yacht Club would ask you to give them a lift you would volunteer your services, wouldn't you? A. Yes."

Of course, had the trial court been correct in ruling that appellant had no right to examine the witness under section 2055, this latter ruling would have been correct, but in view of the error in the first ruling, the prejudice resulting was compounded.

 Appellant contends that prejudicial error was committed in sustaining objections to questions asked by him of his witness Kurt Springer, commanding officer of the Monterey lifeboat station, who examined the end of the pier and the railing a few hours after the accident. He was asked if the railing would have been secure if the pin or pins were not in it. And again he was asked if he could determine from his examination if it would hold its position if the pins were removed. Appellant made no showing that this witness had ever examined the railing when the pins had been removed. One of the witnesses who testified for respondent had tested the railing when the pins were removed, and the other witness was the engineer under whose supervision the railing was built.

The ultimate fact to be determined in regard to the railing was whether or not it was secure when in an upright position, a fact which the jury could in such a case easily determine from their own experience if given sufficient facts. Appellant cites *People* v. *Manoogian*, 141 Cal. 592 [75 P. 177], to the effect that certain questions are of such a nature that it is impossible for a witness to convey to the jury an adequate conception of the ultimate fact except by giving the result of his observation. That was not true here, for if the witness were prepared to testify as to what happened when a person leaned against the railing with the pins removed, the jury could easily deduce whether or not it was safe or secure. In *Mace* v. *Watanabe*, 31 Cal.App.2d 321 [87 P.2d 893], the witness simply testified to a tire mark, describing it as one made by a free running wheel, a matter of common knowledge and observation. (And see *Murphy* v. *County of Lake*, 106 Cal. App.2d 61, 65 [234 P.2d 712].) Clearly appellant was not prejudiced by the rulings on these questions.

In view of the error in denying appellant the right to examine the witness Kono under section 2055, Code of Civil Procedure, the judgment must be reversed.

Judgment reversed.

Nourse, P. J., and Dooling, J., concurred.